UNITED STATES, Appellee

v

RAY D. WILSON, Sergeant First Class, U. S. Army,
Appellant

9 USCMA 223, 26 CMR 3

No. 10,014

Decided May 9, 1958

*First Lieutenant David N. Gorman* argued the cause for Appellant,
Accused. With him on the brief were *Colonel Edward M. O'Connell* and
*Captain John F. Christensen.*

*First Lieutenant Richard W. Young* argued the cause for Appellee,
United States. With him on the brief were *Lieutenant Colonel Thomas J.
Newton, Lieutenant Colonel John G. Lee* and *Major Thomas J. Nichols.*

## Opinion of the Court

HOMER FERGUSON, Judge:
We are again faced with a difficult problem relating to the inclusion of
matters in the post-trial review derived

from sources outside the record of trial. Our most recent pronouncement in this area of military law is found in the case of United States v Martin, 9 USCMA 84, 25 CMR 346. An understanding of the principles involved in that case will high-light the particular issue confronting us here.

In the *Martin* case, supra, the accused had, prior to trial, subjected himself to two lie detector examinations. The results of one of the tests was favorable to the accused on the question of guilt of the offenses charged, while the results of the other test reached a contrary conclusion. The post-trial review contained no mention of either test. The accused there complained that the staff judge advocate should have apprised the convening authority of the results of these tests. A unanimous Court held in that case that the staff judge advocate was under no affirmative legal duty to bring such matter to the attention of the convening authority. Although, we were careful not to place any restrictions on the freedom of the staff judge advocate to alert the convening authority to matters which are favorable to an accused, the decision of whether or not to do so was left within the staff judge advocate's sound discretion. By way of a caveat, we remarked in that case that situations may foreseeably arise where information which is favorable to an accused, and which has come to the staff judge advocate's attention, is of such a nature "that to deprive the convening authority of the benefit of such information might possibly result in a miscarriage of justice." We made it clear that in such situations the staff judge advocate is expected to acquaint the convening authority with such information to the end that "substantial justice be done." With this caveat in mind, we proceed to consider this appeal.

The accused, Sergeant First Class Wilson, was the yard supervisor of the 7th Quartermaster Company petroleum dump in Korea. The noncommissioned officer in charge of the dump was one Sergeant First Class Buckle. One evening in August 1956, a Korean woman approached them and inquired concerning the possibility of purchasing oil products. A meeting was arranged that night where further discussions were conducted concerning this proposition. The accused and Buckle subsequently entered into an agreement, whereby they would deliver oil and alcohol products to a truck to be supplied by her. In return for these products, they were to receive a monetary consideration. The Korean woman then secured the services of one Private First Class Williams to drive an Army truck and take the products out of the dump. Buckle arranged with one Private First Class Speelman, who worked at the loading ramp, to load the products onto the truck without an issue slip. Thereafter, when Williams arrived with the truck, he was led to a ramp where Speelman loaded the products. The accused then relieved the gate guard and permitted the truck to depart without the necessity of checking the trip ticket. The money received from the Korean was divided among the accused, Buckle and Speelman. Several days later the procedure was again repeated. Williams was subsequently apprehended as he was transferring the contents of his vehicle onto a Korean truck.

Buckle and Williams were tried first by a general court-martial and pleaded guilty to their respective roles in the larceny. The accused and Speelman were later tried in a common trial where they pleaded not guilty to two specifications alleging the larceny of Government property in excess of a value of $1,000.00. Each was found guilty as charged. Instrumental in securing their conviction was the testimony of the accomplice Buckle. In their defense both had vigorously denied any connection with the alleged larcenies. Without setting out in detail the entire evidence adduced at their trial, it is sufficient to note that such evidence was far from compelling and was based to a large extent upon the testimony of Buckle.[1]

---

[1] Speelman's conviction was set aside by a board of review because it was "not convinced beyond reasonable doubt that the accused is guilty of larceny." United States v Speelman, CM 393455, April 23, 1957.

The staff judge advocate in the post-trial review, after carefully considering the evidence presented at trial, concluded that such evidence was legally sufficient to sustain the conviction of the accused and Speelman. Under a subsequent section of the review entitled "Clemency," the following information is found:

"6. ..

"c. ..

"(3) The Staff Judge Advocate visited the Eighth Army Stockade in Seoul in order to interview Buckle, Wilson and Speelman. Wilson and Speelman adhered to their claim of innocence. The conviction of Wilson is largely based upon the testimony of Buckle, although a case against Wilson is made out by Williams without Buckle's testimony. A case against Speelman, however, does not exist without the testimony of Buckle. In my interview with Buckle I counselled him as to the gravity of the matter, advised him that what he told me would be kept in the strictest confidence, that the convening authority had already taken action in his case and that absolutely nothing could be gained by him through incriminating Wilson and Speelman. I told him also that if he should repudiate his testimony as to Wilson and Speelman, I would guarantee that he would be held completely harmless and that he would never again hear of it nor would it be repeated to another person without his permission. Buckle was adamant in his claim that if it were not for Wilson he would not be where he is and he was equally forceful in reaffirming his testimony against both Wilson and Speelman. His rendition of the affair is so spontaneous and candid that there can exist no doubt in the mind of any reasonable person as to the sincerity and truthfulness of his testimony. I advised him that I wanted to be certain that he had not fabricated his testimony in order to obtain lenient treatment for himself. He answered that he was not aware that his doing so could possibly result in more lenient treatment for himself. It

should be mentioned that Buckle did not incriminate either Wilson or Speelman until *after* his trial, although based on William's testimony it was a reasonable conjecture that Buckle would likely do so since he had indicated his intention through counsel that he was willing to plead guilty. Buckle was assured that if he did plead guilty he would not be confined over one year, in addition to total forfeitures and dishonorable discharge. The providing of any particular testimony against Wilson or Speelman was not a part of the guilty plea agreement with Buckle, for before his trial Buckle's testimony was not even known. Defense counsel had indicated a willingness on Buckle's part to talk freely of the affair after his trial, and this circumstance did contribute to the lenient sentence agreed upon for Buckle, but the nature of Buckle's testimony was not known until after his trial. At no time did Buckle incriminate either himself, Wilson or Speelman before his trial."

The reviewer recommended the findings and sentence as to each accused be approved. The convening authority's action was in conformity with this recommendation.

We granted review to consider the narrow issue of whether the accused was prejudiced by the inclusion of this information in the review. At the outset, we note that pertinent concessions have been made by both the Government and the accused, which further serve to limit the issue. The Government, for its part, concedes that though the information which is the subject of this appeal is set out in that portion of the review dealing with clemency, it has in fact nothing to do with the appropriateness of sentence but is a matter which goes to the question of guilt or innocence. The accused, on the other hand, concedes the staff judge advocate "acted with the noblest of motives" in visiting the post stockade to interview the prisoner Buckle. We consider both of these concessions well founded and concur fully in them.

It is a well-settled principle of mili-

tary law that a convening authority, in approving a court-martial's finding of guilt, is limited to the evidence adduced in the record of trial. United States v Duffy, 3 USCMA 20, 11 CMR 20. It is equally well settled that a convening authority is not limited to the record in acting to disapprove either findings or sentence or any part thereof. United States v Massey, 5 USCMA 514, 18 CMR 138. The Code, supra, specifically grants to the convening authority the power to disapprove findings and sentence "in his discretion." Article 64, Uniform Code of Military Justice, 10 USC § 864. While acting to approve an appropriate sentence, a convening authority may not consider matters which are derogatory or unfavorable to an accused derived from sources outside the record without first affording him an opportunity of rebuttal. United States v Griffin, 8 USCMA 206, 24 CMR 16; United States v Vara, 8 USCMA 651, 25 CMR 155. We have only to apply these basic ground rules to the present case.

We believe that the dominant purpose behind the staff judge advocate's post-trial interview with the accomplice Buckle was to resolve certain doubts which had arisen concerning the question of the accused's guilt. If this be not so, then we are at a loss as to why the reviewer should personally undertake such an extensive investigation after the accused had already been accorded a trial by general court-martial. Furthermore, we are convinced that at the time this interview was first conceived, it was the sincere and conscientious desire of the staff judge advocate to uncover information favorable to the accused. The fact remains, nevertheless, that the information obtained was unfavorable to the accused and provided sufficient weight —as far as the staff judge advocate was concerned—to tip the scales against the accused. It is noted in the review that he was so impressed with Buckle's "spontaneous and candid" account of the incident that there no longer remained any doubt in his mind of the accused's guilt. This may well have

been the "clincher" which prompted the subsequent recommendation that the findings and sentence be approved. In this respect, the case comes within our holding in *Duffy*, supra, and the convening authority erred in considering such matter in acting to approve the findings of guilt.

We realize that the result we reach represents what may be termed a "one-way street" in an accused's favor in which he can only win, and never lose. However, we cannot escape the conclusion that the post-trial review and the action of the convening authority together represent an integral first step in an accused's climb up the appellate ladder. This step is oftentimes the most critical of all for an accused because of the convening authority's broad powers which are not enjoyed by boards of review or even by this Court. It is while the case is at the convening authority level that the accused stands the greatest chance of being relieved from the consequences of a harsh finding or a severe sentence. To permit consideration by the convening authority of matters falling outside the record to bolster a conviction strikes us as an unwholesome deviation from basic concepts of fair play. The Government's omissions in court cannot be cured by *ex parte* proceedings out of court.

The decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General of the Army for reference to another convening authority for new proceedings in accordance with Articles 61 and 64 of the Code, supra, 10 USC §§ 861 and 864.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

Slight extensions from case to case often turn good principles into bad law. That result necessari- ly follows when, as here, we extend our holdings to further interfere with the post-trial clemency activities of reviewing authorities. I make that observation for the reason that the effect of the principal

opinion may be to dissuade a conscientious staff judge advocate from conducting any independent inquiries when he may have personal doubt as to the credibility of the witnesses used by the Government. In the case at bar, testifying against the two accused who were convicted by the court-martial was one of their associates in crime, whose testimony no doubt was a contributing factor leading to their conviction. The staff judge advocate in the substantive portion of his review at least three times states that the evidence of record was sufficient to find the accused guilty beyond a reasonable doubt. However, pursuant to Army procedure, he held a post-trial interview with the accused, during which they vigorously contended that the Government witness, Buckle, had committed perjury. No doubt the zeal with which they asserted this fraud upon the court prompted the staff judge advocate to make his own investigation as to the veracity of the Government's witnesses. As the evidence of record was more than sufficient to support the accused's conviction, it was only through a possible confirmation of the perjury allegations that the staff judge advocate might have found some reasonable basis for recommending reversal. Having embarked upon this investigation for the benefit of the accused, he had a duty to fully inform the convening authority of the results of his mission. This is substantially what a unanimous Court espoused in United States v Massey, 5 USCMA 514, 18 CMR 138, wherein we quoted with approval the following language from United States v Pratts-Luciano, 15 CMR 481:

". . . That is to say, we believe, that the authority of a convening authority *to approve* findings and sentence is conditioned by the evidence of record and the law of the case, whereas his authority *to disapprove* is conditioned only by his discretion. Where, as in this case, there is brought to the attention of a staff judge advocate a matter extraneous to the record that indicates disapproval may be warranted in the interests of justice, it is the staff judge advocate's duty to cause the matter to be investigated and reported to the convening authority with appropriate advice. The fact that his advice with respect to the extraneous matter may be adverse to the accused does not impeach his recommendation and the pursuant action of the convening authority on the record of trial proper. To hold otherwise would be to circumscribe the convening authority in the exercise of his discretion under Article 64 of the *Code* and would induce, rather than prevent, miscarriages of justice."

As I understand the principal opinion, it overturns the law as stated in *Massey,* supra, in the interest of accused persons. But paradoxically, in the long run it may redound to their prejudice, since most legal functionaries will find little use in engaging in a "one-way street" investigation. But more detrimental in this instance is the erroneous concept that information obtained by the staff judge advocate was used to support the findings. On review a witness is assumed to be credible unless within the confines of the record he is impeached and, of course, that did not happen here. Had the staff judge advocate been content to rely on the record, all would have been well, but he went further to protect the rights of the accused. He satisfied himself, and so reported to his superior, that the court and the defense had not been imposed upon by a perjurer. In what manner the appellant was harmed by that extra-record consideration remains a mystery to me. That there was abundant evidence to support the findings may be gathered from the staff judge advocate's repeated reference to the evidentiary support of the findings and his statement that the "case against Wilson is made out by Williams without Buckle's testimony." Therefore, the interview with Buckle could not be a factor which influenced his opinion on the weight of the evidence. All that it did was resolve any doubt raised in his mind by his conversation with the accused—a doubt which had no reflection in the record and would never have been raised had the staff judge advocate not listened

**227**

sympathetically to the accused and acted in their behalf.

Accordingly, I would affirm the decision of the board of review.