UNITED STATES, Appellee

v

BUDD C. WETZEL, Sergeant, U. S. Air Force, Appellant

19 USCMA 370, 41 CMR 370

No. 22,443

April 17, 1970

Colonel *Bertram Jacobson* argued the cause for Appellant, Accused. With him on the brief was *Major John T. Dorman.*

Colonel *James M. Bumgarner* argued the cause for Appellee, United States.

## Opinion of the Court

FERGUSON, Judge:

We granted review in this case to consider the allegation of appellate defense counsel that the appellant was prejudiced as to findings and sentence by trial counsel's post-trial attempt to influence the convening authority's determination regarding appropriateness of sentence.

Subsequent to trial on March 4, 1969, at which the accused was convicted of attempted larceny of Government property, in violation of Article 80, Uniform Code of Military Justice, 10 USC § 880,[1] and sentenced to a bad-conduct discharge, total forfeitures and confinement at hard labor for two years, the officer who conducted the post-trial clemency interview of the accused recommended, in a report dated March 31, 1969, that the 3320th Retraining Group, Lowry Air Force Base, Colorado, be designated as the place of confinement.[2] The accused's squadron section commander requested that consideration be given to remitting the bad-conduct discharge and recommended that the accused be sent to the Air Force retraining group. His First Sergeant (a Senior Master Sergeant) also recommended that the accused be retained in the service. A Lieutenant Colonel, who had also formerly worked closely with the accused, by letter stated that had he learned in time of the charges against the accused, he "would most assuredly have appeared in his behalf as a character witness. . . . I strongly recommend that every consideration be given to including this man in the United States Air Force Rehabilitation Program."

Four days after this report was submitted and prior to the preparation of

---

[1] Since the original charge alleged larceny under Article 121, Uniform Code of Military Justice, 10 USC § 921, the court's finding was arrived at by exceptions and substitutions.

[2] According to the clemency report, "The accused has no prior convictions, civilian or military. He has never been the recipient of any non-judicial or administrative punishment. The performance reports on the accused since the beginning of his career have him rated in at least the eighth block of nine blocks; the majority are nines."

·the staff judge advocate's review for the convening authority, dated May 16, 1969, the following communication was received in the office of the staff judge advocate:

"As trial counsel in the Wetzel and Masemer cases, I feel compelled to advise the convening authority that Sergeant Budd C. Wetzel, 6200 Security Police Squadron, APO San Francisco 96274, refused to co-operate with the government after his own trial and refused to testify against his accomplice, TSgt Masemer. He even went so far as to. take the stand in the Masemer case and state that he had been threatened ·with a perjury charge by the Trial Counsel unless he changed his story. Needless to say, this alligation [sic] is completely false. This attempted obstruction with the government's case and complete lack of co-operation convinces me that Sergeant Wetzel is not the proper subject of any rehabilitation efforts." [James A. McKelvey, Captain, USAF, Trial Counsel.]

In addition, the office of the staff judge advocate was the beneficiary of the following self-explanatory memorandum:

"1. It is my understanding that you were trial counsel in the recent court-martial of the above mentioned case. I don't know if the sentence has been approved yet, however, I submit the following to be considered in determining the final sentence.

"2. While in pre-trial confinement, Sergeant Wetzel had a chance to observe one of my accused, an Airman Bolling, who was likewise in pre-trial confinement. My main defense in the Bolling case (recently tried) was insanity and I had talked to Sergeant Wetzel earlier about some bizarre acts he had noticed Bolling performing while in confinement. Several days before the Bolling trial I called Sergeant Wetzel and asked if he would testify in Bolling's behalf as to the bizarre acts of Bolling's which he had observed. He stated that while his earlier observation of Bolling's bizarre behavior was true, he said he would not testify because he did not want to get involved; he, Wetzel, had his own problems to worry about and he didn't care what happened to Bolling. I advised him that I was requesting his testimony only to help Bolling to which he replied he didn't care—he didn't want to get involved.

"3. I believe Sergeant Wetzel's present attitude is not that of sorrow and repentance nor do I feel clemency is appropriate at this time. All people who want to make the Air Force a career, I believe, should want to get involved and should care about other people in the Air Force. Until Sergeant Wetzel exhibits such an attitude, my feelings, for what they are worth, are that clemency is not in order." [Griffin T. Garnett, III, Captain, USAF.]

Both letters were presented to the accused for his consideration and his rebuttal is set forth below:

"1. I wish to submit the following rebuttal to the letters of Captains McKelvey and Garnett, dated 4 and 18 April 1969, respectively.

"2. Captain McKelvey's letter of 4 April is not consistent with the facts: I maintained my innocence throughout my trial prior to Technical Sergeant Masemer's trial; if I then testified against Technical Sergeant Masemer, I would necessarily admit guilt. This would put me in a legal position inconsistent with my prior position and would obviously result in my being charged with perjury. It should be pointed out that I testified under oath that I had been coerced by Captain McKelvey upon questioning by defense counsel, and did not voluntarily put this information before the .court (see p. 164, U. S. v Masemer).

"a. Captain McKelvey did not deny it at the time nor did he cross-examine on this point nor did he refer to it in argument (pp 188–197, 203–204, U. S. v Masemer). Instead, he denied it one week later in a letter

dated 4 April. It is a fundamental rule of evidence that silence can constitute an admission (p 27–17, MCM, 1969). Captain McKelvey is an experienced attorney and well aware of this evidentiary rule, yet he uttered no denial. Such silence by Captain McKelvey tends to indicate that my statement at trial was true. Further, I advised Captain Pacifico, my defense counsel, of Captain McKelvey's remarks as soon as I left Captain McKelvey's office, to which Captain Pacifico can attest.

"b. The ABA Code of Ethics provides in Canon 39: 'A lawyer may properly interview any witness or prospective witness for the opposing side in any civil or criminal action without the consent of opposing counsel or party. In doing so, however, he should scrupulously avoid any suggestion calculated to induce the witness to suppress or deviate from the truth, or in any degree to affect his free and untrammeled conduct when appearing at the trial or on the witness stand. . .' By making his allegation in his letter of 4 April 1969, Captain McKelvey is impugning the integrity of defense counsel who asked the question.

"c. Captain McKelvey also advised me prior to the Masemer trial if I did not cooperate in the Masemer trial that he would do everything possible to keep me from being sent to the 3320th Retraining Group for rehabilitation. He also states in his letter of 4 April 1969 that I refused to cooperate in the Government's case. At the time of trial, I was called as a witness and did cooperate fully with the questioning.

"3. I feel Captain McKelvey should have given his letter to Captain Gales, the officer who conducted my post-trial clemency interview, and should not have forwarded it directly to the convening authority.

"4. Captain Garnett's letter of 18 April 1969 accurately states the facts of the Bolling incident with one important exception. Between the time that I originally discussed Airman Bolling's bizarre acts with Captain Garnett and the time that Captain Garnett asked me to testify, I had a serious argument with Airman Bolling, and I did not want to testify in his behalf because he seemed to try deliberately to antagonize everyone that he associated with. I did not advise Captain Garnett of this disagreement, but just stated to him that I would prefer not to testify in Bolling's behalf.

"5. Captain John P. Falconer, Jr., 6200th Air Base Wing, assisted me in the preparation of this rebuttal."

The post-trial review was prepared by the assistant staff judge advocate and concurred in, both as to the opinions and recommendations, by the staff judge advocate. In the review, the above-noted clemency recommendations were referred to. No mention was made of the memoranda from Captains McKelvey and Garnett or to the accused's rebuttal. However, the reviewer stated his disagreement with the appeals for clemency and "recommend[ed] that the accused be confined temporar[i]ly at the Consolidated Correctional Facility, Travis AFB, California. If further evaluation there indicates a potential for successful restoration, he may then be reassigned to the 3320th Retraining Group."[3] The convening authority approved the findings and sentence and directed that the accused be confined at Travis Air Force Base, California.

Article 37, Code, supra, 10 USC § 837, provides, in pertinent part, that:

". . . No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence . . . the action of any convening, approving, or reviewing authority with respect to his judicial acts."

---

[3] Appellate defense counsel, in their brief before this Court, acknowledged that after being evaluated at the prisoner receiving station, Travis Air Force Base, the accused was sent to the 3320th Retraining Group, Lowry Air Force Base, Colorado.

The Government contended, and in support thereof submitted appropriate affidavits from the assistant staff judge advocate who prepared the review and the convening authority, that the letters were not considered in the preparation of the review and that the convening authority was not influenced in his action because the communications from the trial counsel and from Captain Garnett were not brought to his attention.[4]

We think that the contention of the Government misses the point at issue. The staff judge advocate is █ required to advise the convening authority relative to the latter's action on the record and the convening authority ordinarily follows this advice. In the event he desires to take a different action, the convening authority is required to record the reasons for his action in a letter to the Judge Advocate General. Paragraph 85, Manual for Courts-Martial, United States, 1969 (Revised edition). Hence, it can be seen that influence upon the staff judge advocate's recommendation may directly affect the convening authority's action.

In the case at bar, the advice of the staff judge advocate was directly contrary to the firm recommendation for clemency by █ commissioned and noncommissioned Air Force personnel, who had worked closely with the accused. These recommendations, considering their source, are not to be taken lightly for they are not lightly given. Although the assistant staff judge advocate, who prepared the advice, asserted in his post-trial affidavit that he disregarded the content of the letters from Captains McKelvey and Garnett, we believe that there is more than a fair risk that the *intemperate* memoranda from the trial counsel and from Captain Garnett made him more cautious than he would have otherwise been and resulted in a recommendation for halfway measures, involving the discretion of others, in the

face of noteworthy appeals for immediate clemency by the convening authority. Cf. United States v Duffy, 3 USCMA 20, 11 CMR 20 (1953) ; United States v Wilson, 9 USCMA 223, 26 CMR 3 (1958). These communications were from fellow officers of the court who are sworn to uphold the honesty and integrity of the judicial process. While their total impact is incalculable, we think that at a minimum they influenced the staff judge advocate to recommend against an immediate decision on probation and the concomitant question of the length of confinement.

Trial counsel's allegation that the accused was guilty of the criminal offense of attempting to obstruct justice in the subsequent trial of an alleged accomplice, if true, warranted the filing of separate court-martial charges. Considering the source of the allegation, the accused's denial, in his rebuttal, would have little impact in the eyes of an attorney as experienced as the assistant staff judge advocate or his superior. We have not been favored with any further explanation from trial counsel as to why he felt impelled to attempt to block the recommendation, made four days previously, that the accused be sent to the retraining group. His memorandum indicates that his action was based on the accused's refusal to testify against an alleged accomplice. But this refusal is understandable for the accused had testified under oath at his own trial and denied any intent to steal. Only testimony to the contrary would be of benefit to the Government in the trial of the accomplice. Had the accused so testified at the second trial, the spectre of being charged with having committed perjury on his own behalf would be present. Without a promise of immunity from prosecution in the event he gave testimony at odds with that given in his own trial, and none is mentioned, such a position was incongruous. Even with a promise of immunity his position was untenable for he was aware, and so, apparently,

---

[4] For the purpose of this appeal, we need not consider the degree to which information as to sentence, addressed to the convening authority, may be withheld by the staff judge advocate.

was the trial counsel, that the convening authority had not yet acted upon the record of accused's trial. Testimony at the accomplice's trial, contrary to his previous assertion of innocence, under oath, might well have occasioned an adverse reaction at this first step in the accused's climb of the appellate ladder. As this Court stated in United States v Wilson, supra, at page 226:

". . . This step is oftentimes the most critical of all for an accused because of the convening authority's broad powers which are not enjoyed by boards of review or even by this Court. It is while the case is at the convening authority level that the accused stands the greatest chance of being relieved from the consequences of a harsh finding or a severe sentence. To permit consideration by the convening authority of matters falling outside the record to bolster a conviction strikes us as an unwholesome deviation from basic concepts of fair play."

In these circumstances, the accused's refusal to testify against his alleged accomplice can hardly be characterized, as it was by trial counsel, as an "attempted obstruction with the government's case and [a] complete lack of co-operation."

In his post-trial affidavit, the assistant staff judge advocate, who prepared the review, asserted that he had disregarded the memoranda from Captains McKelvey and Garnett. However, he did not recall whether the accused's rebuttal was available to him at that time. While matters outside the record may be considered by the convening authority, when he is acting to approve an appropriate sentence, if the accused is first afforded an opportunty of rebuttal (United States v Griffin, 8 USCMA 206, 24 CMR 16 (1957); United States v Vara, 8 USCMA 651, 25 CMR 155 (1958)), it is a well-settled principle of military law that in approving a finding of guilt, the convening authority is limited to the evidence adduced in the record of trial. United States v Duffy and United States v Wilson, both supra. We are assured by the Government that this allegation was not considered in the preparation of the advice. However, it is, as we have noted, uncertain whether the accused's rebuttal was available during the preparation of the reveiw. In these circumstances, we believe that justice would best be served by ordering a new post-trial review as to both findings and sentence.

The decision of the Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Air Force for post-conviction proceedings by another general court-martial authority.

Chief Judge QUINN concurs.

DARDEN, Judge (dissenting):

I agree that Wetzel's refusal to testify against a person alleged to be his accomplice and his refusal to testify in behalf of another accused should not affect the appropriateness of Wetzel's sentence. I am satisfied that these considerations could not have affected the question of Wetzel's guilt or innocence.

Wetzel has been restored to duty, and his suspended discharge is scheduled for early remission, if the remission has not already occurred. I agree with appellate defense counsel who stated in commendable candor, "in all honesty we cannot think of any relief appellant could reasonably ask for at this time with regard to sentence." Consequently, I dissent.