UNITED STATES, Appellee,

v.

Eric L. JOHNSTON, Fireman Recruit,
U.S. Navy, Appellant.

No. 98–0829.
Crim.App. No. 97–1274.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 10, 1999.

Decided Aug. 9, 1999.

COX, C.J., delivered the opinion of the Court in which SULLIVAN, GIERKE, and EFFRON, JJ., joined. CRAWFORD, J., filed a dissenting opinion.

For Appellant: *Lieutenant Mari–Rae Sopper*, JAGC, USNR (argued); *Lieutenant Albert L. Di Giulio*, JAGC, USNR.

For Appellee: *Major Mark K. Jamison*, USMC (argued); *Colonel Kevin M. Sandkuhler*, USMC, and *Commander Eugene E. Irvin*, JAGC, USN (on brief); *Commander D.H. Myers*, JAGC, USN, and *Major Clark R. Fleming*, USMC.

Chief Judge COX delivered the opinion of the Court.

On April 18, 1994, at Naval Station Long Beach, California, appellant was tried by a military judge sitting as a special court-martial. Pursuant to his pleas, he was convicted of 1 specification each of unauthorized absence and wrongful introduction of marijuana onto a military reservation with intent to distribute same, and 2 specifications of wrongful distribution of marijuana.[1] The judge sentenced appellant to be confined for 3 months, to forfeit $550.00 pay per month

---

1. Articles 86 and 112a, Uniform Code of Military Justice, 10 USC §§ 886 and 912a, respectively.

for 3 months, and to be discharged from the Navy with a bad-conduct discharge.

We granted appellant's petition for review to consider the following issues:

## I

WHETHER DETAILED DEFENSE COUNSEL'S FAILURE TO CONTACT APPELLANT PRIOR TO REVIEW OF, AND RESPONSE TO, THE STAFF JUDGE ADVOCATE'S POSTTRIAL RECOMMENDATION WAS AN ERROR WHICH PREVENTED THE SUBMISSION OF CLEMENCY MATTERS FROM APPELLANT TO THE CONVENING AUTHORITY, PREJUDICING APPELLANT BY DENYING HIM HIS BEST HOPE OF SENTENCE RELIEF.

## II

WHETHER SUBSTITUTE MILITARY COUNSEL SHOULD HAVE BEEN DETAILED TO ACCEPT SERVICE AND RESPOND TO THE NEW RECOMMENDATION OF THE STAFF JUDGE ADVOCATE SINCE APPELLANT'S DETAILED DEFENSE COUNSEL WAS NO LONGER ON ACTIVE DUTY.

The posttrial history of this case is essential to resolution of the granted issues. The staff judge advocate (SJA) prepared a recommendation and served it on detailed counsel, Lieutenant (Lt.) B. Neither the recommendation nor the action of the convening authority was dated. In the action, the convening authority purported to suspend confinement in excess of 60 days from the date of trial. However, the action did not state a period of time for the suspension to run.

In view of the lack of dates, the Court of Criminal Appeals, on February 9, 1995, set aside the convening authority's action and ordered a new recommendation and action. It also directed that a certificate of correction be prepared as the record failed to reflect that seven prosecution exhibits were admitted in evidence. Unpub. op. at 2.

The military judge apparently executed a certificate of correction on February 28, 1995. However, no further action was taken on the record at that time. He executed a second such certificate on May 14, 1997. On August 29, 1997, a new recommendation was prepared. By that date, Lt. B had been released from active duty and had no clear military status. Substitute counsel was not detailed to represent appellant.

The new recommendation was served on Mr. B at his civilian address in Colorado on October 15, 1997. He did not contact appellant, who was on appellate leave and, ironically, also living in Colorado at the time. Mr. B made no response, and a successor convening authority took action on October 28, 1997. Again the sentence was approved, but confinement in excess of 60 days was suspended for a period of 6 months from the date of trial.

Appellant first became aware of the second action and recommendation when he was notified of the proceedings by his new appellate defense counsel. In response he advised appellate defense counsel that he could have sent him documents to submit in a request for clemency.

On March 31, 1998, the Court of Criminal Appeals affirmed the findings and sentence as approved by the successor convening authority. Appellant sought reconsideration of that decision, which was denied on April 29, 1998.

The Court of Criminal Appeals concluded that appellant's former detailed defense counsel, though "no longer in the Navy[,] ... apparently still had an attorney-client relationship with the appellant and continued to be reasonably available to represent him," unpub. op. at 2, notwithstanding former counsel's affidavit that he had received and reviewed the SJA's recommendation but "did not intend to submit further matters for consideration by the convening authority," and he "ha[d] not been in contact with ... [appellant] since ... [his] release from active duty."

In addition, the Court of Criminal Appeals concluded that "appellant was fully represented by presumptively competent [appellate] defense counsel" throughout. Unpub. op. at 2. However, appellant flatly denies

receiving a copy of the new recommendation; the Government offers nothing to suggest that appellant in fact received a copy; and new appellate defense counsel, in the petition for reconsideration at the lower court, flatly denies being notified of the recommendation prior to the convening authority's action.

Thus, the "bottom line" was that appellant was not represented by counsel under Article 27(b), UCMJ, 10 USC § 827(b), at this critical point in the criminal proceedings against him, as required by RCM 1106(f)(2), Manual for Courts–Martial, United States (1995 edition). *See United States v. Hickok*, 45 MJ 142 (1996); *United States v. Leaver*, 36 MJ 133 (CMA 1992).

The Court of Criminal Appeals also asserted that appellant was somehow remiss by not contacting the convening authority, Mr. B, or his appellate defense counsel. Unpub. op. at 3. This position is not well-taken. As new appellate defense counsel correctly notes:

(1) Appellant did not know Mr. B's whereabouts;

(2) Appellant did not know that he had an opportunity to submit matters to be considered for clemency; and,

(3) Appellate defense counsel was not "aware of the window of opportunity" to make such a submission because the recommendation was not served on current appellate counsel.

■ This Court has long held that the accused's best opportunity for sentence relief is with the convening authority. *See United States v. Bono*, 26 MJ 240, 243 n. 3 (CMA 1988), citing *United States v. Wilson*, 9 USC-MA 223, 226, 26 CMR 3, 6 (1958). The failure of the convening authority to detail substitute counsel for appellant deprived him of that opportunity. Thus, appellant suffered harm prejudicial to his substantial rights. *Cf. United States v. Wheelus*, 49 MJ 283 (1998).

Finally, we note that when records of trial come to the Courts of Criminal Appeals with defective staff work, as was the case here, they simply are not ready for review. Such matters include, but are not limited to, the failure to serve detailed or substitute counsel

with a copy of the SJA's recommendation. When such an error is brought to the attention of the Court of Criminal Appeals, that court should promptly return the record of trial to the convening authority for preparation of a new SJA's recommendation or convening authority's action (as appropriate), unless the record contains the type of error that may readily be corrected by the court without prejudice to the substantial rights of the accused. *See United States v. Wheelus*, supra.

In most cases, the better practice will be to return the record of trial to the convening authority before appellate counsel and the appellate courts expend any further effort on reviewing other aspects of the case that may be affected by a proper recommendation and action by the convening authority. It is that official's duty, not ours, to consider what action is appropriate in the premises. Had such action been taken herein, this case would not be before us for review.

We take this opportunity to reiterate our disagreement with the dissenting opinion in this case, for the same reasons that we disagreed with a similar dissent in *United States v. Lee*, 50 MJ 296, 299 (1999). But, we note that her view that appellant is unlikely to get any relief from a new convening authority is an issue upon which reasonable people might disagree.

Our opinion is not about whether this appellant gets relief—that is the question the convening authority must answer. Our concern is ensuring that the law is adhered to, established procedures are followed, and staff judge advocates do their jobs. Obviously the supervisory responsibility for military justice advice to convening authorities lies with the Judge Advocates General of the Armed Forces and the General Counsel of the Department of Transportation. *See United States v. Johnson–Saunders*, 48 MJ 74, 76 (1998) (Crawford, J., dissenting). Hopefully, these statutory officers are being kept abreast of the numerous cases in which this Court must act on issues resulting from sloppy staff work and inattention to detail. It is also hoped that they are responding by

holding those responsible accountable for their actions or lack thereof.

All this Court can do to ensure that the law is being followed and that military members are not being prejudiced is to send these cases back for someone TO GET THEM RIGHT.

The 1998 decision of the United States Navy–Marine Corps Court of Criminal Appeals and the 1997 action of the convening authority are set aside. The record of trial is returned to the Judge Advocate General of the Navy for resubmission to that court, which may either meaningfully reassess the sentence or order a new SJA's recommendation and convening authority's action. *United States v. Wheelus, supra.*

CRAWFORD, Judge (dissenting):

As recently as *United States v. Wheelus,* 49 MJ 283, 288 (1998), we held that we would not grant relief for post-trial errors unless an appellant alleges an "error at the Court of Criminal Appeals," establishes "prejudice as a result of the error," and demonstrates what steps he would have taken to remedy the error given the opportunity to do so. Clearly, prejudice cannot be established in this case.

Pursuant to a pretrial agreement, appellant was convicted of a 14–day unauthorized absence, introduction of marijuana onto a military installation with intent to distribute, and 2 specifications of distribution of marijuana, in violation of Articles 86 and 112a, Uniform Code of Military Justice, 10 USC §§ 886 and 912a, respectively. The pretrial agreement also provided for dismissal of one specification of possessing drug paraphernalia in violation of a lawful general regulation and placed a limitation on the sentence by providing for suspending all confinement in excess of 60 days for 6 months from the date of trial.

The first staff judge advocate's recommendation (SJAR) was served on appellant's trial defense counsel on June 10, 1994. At that time, he acknowledged receipt of the SJAR and had no comments or post-trial submissions for the convening authority. Appellant's trial defense counsel left active duty in

September 1994, but remains in the reserves. The record of trial was returned by the Court of Criminal Appeals for certain corrections, and trial defense counsel received a certificate of correction on April 29, 1997. He signed his review and receipt as a reservist. A second SJAR was served on the same defense counsel on October 15, 1997. Again, that same defense counsel acknowledged receipt and had no comments or submissions.

The majority poses the critical decision in this case in its decretal paragraph by stating that the court below "may either meaningfully reassess the sentence or order a new SJA's recommendation and convening authority's action." 51 MJ at 230.

I must ask whether, based on this appellant's record, there is any practical chance that with this record he would receive a different result either from the court below or a new convening authority action? A review of that record reveals that not 4 months after enlisting, appellant was given an Article 15 on June 15, 1992. A second Article 15 was imposed on August 6, 1992, for failure to comply with a lawful general regulation. A third Article 15 was imposed on December 23, 1992, for drunk and disorderly conduct. A fourth Article 15 was imposed on November 11, 1993, for drunk and disorderly conduct, incapacitation for duty, and disrespect toward a superior noncommissioned officer. Additionally, the punishment imposed as a result of the fourth Article 15 was vacated on February 3, 1994, at which time a fifth Article 15 was imposed on appellant. Lastly, appellant, while on active duty, entered a plea of nolo contendere to a misdemeanor drug offense in state court. Not only has appellant not established prejudice in this case, but also it is hard to imagine that any convening authority would want to retain appellant in the Navy. Surely a convening authority would prefer a new recruit to an individual with appellant's abysmal record.

Certainly it would have been preferable to detail an active-duty attorney to review the certificate of correction and second SJA's recommendation. But a competent reservist attorney who was fully familiar with appel-

lant and his case made that review. The course of action he chose the second time around was just as legitimate as it was for the first clemency petition. Letters from appellant's family, pastor, and acquaintances were undoubtedly no match for the offense-ridden record presented to the convening authority. This is hardly the factual circumstance to address a reservist's competence for the post-trial review stage.

As I stated in my dissent in *United States v. Johnson–Saunders*, 48 MJ 74, 76 (1998):

> During this "downsizing climate," this Court has returned numerous cases for new staff judge advocate (SJA) recommendations and actions, *see, e.g., United States v. Carnley*, 46 MJ 401 (1997); *United States v. Parks*, 46 MJ 114 (1996); and *United States v. Dresen*, 43 MJ 372 (1995); or for resolution of questions concerning post-trial representation by counsel, *see, e.g., United States v. Tise*, 43 MJ 446 (1995); *United States v. Dickey*, 43 MJ 170 (1995); and *United States v. Williams*, 43 MJ 149 (1995), but no favorable convening authority actions have been taken.

*See also United States v. Catalani*, 46 MJ 325 (1997); *United States v. Edwards*, 45 MJ 114 (1996).

However, I agree with the majority that the Judge Advocates General or their equivalent should be aware of the numerous cases that are coming before this Court due to sloppy staff work and inattention to detail. *See* 51 MJ at 229.