IN THE CASE OF


UNITED STATES, Appellee

v.

Gary W. TAYLOR, Airman First Class (E-3)
U.S. Air Force, Appellant

No. 03-0692

Crim. App. No. 34852

United States Court of Appeals for the Armed Forces

Argued April 20, 2004

Decided August 20, 2004

GIERKE, J., delivered the opinion of the Court, in which EFFRON
and ERDMANN, JJ., joined.  CRAWFORD, C.J., and BAKER, J., filed
separate dissenting opinions.

Counsel

For Appellant: Major Antony B. Kolenc (argued); Colonel Beverly
B. Knott, Major Terry L. McElyea (on brief).

For Appellee: Lieutenant Colonel Robert V. Combs (argued);
Colonel LeEllen Coacher (on brief); Major Shannon J. Kennedy.

Military Judge:  G. E. Pavlick




**This opinion is subject to editorial correction before final publication**.

Judge GIERKE delivered the opinion of the Court.

This case concerns whether the staff judge advocate and convening authority were disqualified from participating in the post-trial review due to an article that the base newspaper published about Appellant's court-martial. During Appellant's sentencing hearing, the military judge suppressed adverse personnel records due to careless mistakes in their preparation. The trial counsel wrote an article for the base newspaper warning commands of the consequence of shoddy personnel records. The article suggested a negative view of Appellant and his rehabilitative potential. The staff judge advocate noted that the article's views could be imputed to him and failed to disassociate himself from the article, but nevertheless declined to disqualify himself from Appellant's post-trial review. That erroneous decision requires a new recommendation prepared by a staff judge advocate who is, and appears to be, neutral.

BACKGROUND

Appellant was tried by a general court-martial consisting of officer and enlisted members. He entered mixed pleas. He pleaded guilty to, and was found guilty of, violating a general regulation by viewing sexually explicit material on a government computer and two specifications of willful dereliction of his duties as a hospital respiratory technician in violation of

Article 92 of the Uniform Code of Military Justice (UCMJ).[1]  On the contested charge, the members found him not guilty of two specifications of drug distribution in violation of Article 112a of the UCMJ.[2]  The members sentenced him to a bad-conduct discharge and reduction to the lowest enlisted grade, which the convening authority approved as adjudged.  The Air Force Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.[3]

FACTS

Appellant was tried on September 4-6, 2001, by a court-martial convened by the Commander of Headquarters, Air Warfare Center at Nellis Air Force Base, Nevada.  During the sentencing hearing, the military judge sustained a defense objection to an incomplete record of individual counseling.  The defense then objected to an undated letter of counseling.  Before soliciting the trial counsel's response, the military judge commented that "if the squadron can't comply with dates on when [sic] they issue letters, honestly, the only way that gets brought to their attention is if the judge says that kind of stuff is not

---

[1]  10 U.S.C. § 892 (2000).

[2]  10 U.S.C. § 112a (2000).

[3]  United States v. Taylor, No. ACM 34852, 2003 CCA LEXIS 170, 2003 WL 21800753 (A.F. Ct. Crim. App. July 28, 2003).

acceptable." The trial counsel replied, "I understand the problem . . . . There's not much I can argue on that one." The military judge then sustained the objection and added, "[S]quadrons need to get the idea that, if this is going to later be used for some purpose, it ought to be done correctly."

Eight days after Appellant's court-martial adjourned, the trial counsel from the case — Captain Melissa Burke — published an article in the Nellis Air Force Base's newspaper, the Bullseye. The article identified its author by name, indicated that she was assigned to the "Legal Office," and provided a telephone number at the Military Justice Division for readers with questions.

Captain Burke's article began by warning that "[e]rrors in the administration of letters of counseling, letters of admonishment, and letters of reprimand may have devastating effects in [sic] the proper administration of justice in a court-martial proceeding." Without ever naming Appellant, the article continued, "In a recent court-martial the panel was not given a complete picture of the member's military service record including numerous adverse actions spanning a period of two years." It explained that at a court-martial held in early September, the military judge excluded several adverse personnel records. After detailing the proper procedures for preparing such documents, the article described the excluded documents'

deficiencies. The trial counsel's article then opined, "The interests of justice were clearly not met in the case referenced above." The article elaborated, "The members were not informed of the full measure of [the accused's] previous Uniform Code of Military Justice involvement. Further, they were not informed that he was not a good candidate for rehabilitation as evidenced by his failure to properly respond to lesser forms of corrective measures." The article then reiterated, "Justice was not served."

In a memorandum dated November 29, 2001, the defense counsel complained to the convening authority about the article. She wrote, "Sir, the same legal office which advises you on military justice matters, including clemency, should not publish an article in your newspaper which complains to the base population that justice was not done." The memorandum contended, "Not only does this undermine the faith in our military justice system, it puts you in an uncomfortable position as a convening authority who must stay objective and open-minded to granting clemency."

The defense counsel prepared another memorandum, dated the following day, seeking the staff judge advocate's and convening authority's disqualification. In this memorandum, the defense counsel argued that "[b]ecause of this article, the SJA" and his staff "are disqualified from advising the convening authority,

5

including writing the SJA recommendation." She also wrote that the convening authority "may be disqualified from acting on clemency." The defense counsel reasoned that "[a]nnouncing that 'justice was not served' is prejudgment on whether to grant clemency, and no personnel from the [staff judge advocate's] office may make a recommendation to [the convening authority] on clemency for A1C Taylor."

The defense counsel also noted that the convening authority "is the first person named as part of the Bullseye Editorial Staff." She argued, "If this article can in any way be imputed to him, he is disqualified from acting as the general court-martial convening authority in this case."

In response, an addendum recommendation advised the convening authority that "[t]he article can be imputed to your Staff Judge Advocate." The addendum recommendation also stated that "[t]he article does not exhibit a partial or biased opinion on the part of your Staff Judge Advocate towards clemency or post-trial submissions on behalf of Airman Taylor." It added, "Further, there is absolutely no evidentiary or legal basis for you to disqualify yourself as the Convening Authority in this case."

The addendum recommendation was signed by the chief of military justice and also included the staff judge advocate's signature under a block reading, "I concur. I recommend you

approve the sentence and with the exception of the bad conduct discharge, order it executed."

The convening authority signed an undated indorsement to the addendum recommendation stating that "I was neither involved in the writing of, nor has my action been influenced in any way by the newspaper article authored by Capt Melissa Burke, imputed to my Staff Judge Advocate, and published by the Bullseye on 14 Sep 01, entitled 'Documentation of disciplinary action can affect court-martial.'"  On December 5, 2001, the convening authority approved the sentence as adjudged.

The record of trial also includes an affidavit that the convening authority executed three days after acting on the case.  The affidavit states that before the defense counsel called the convening authority's attention to Captain Burke's article, he "was unaware of the article's existence."  He also stated, "I played no role in the preparation or publication of the article."

In his affidavit, the convening authority also explained, "I reviewed the record of trial, all defense submissions, and staff judge advocate recommendations prior to approving the sentence.  I specifically did not allow any information in the article brought to my attention by the defense to influence my decision."  The convening authority also stated, "I am confident that I would have approved the sentence without reference to the

staff judge advocate recommendations based on my independent review of the evidence and defense submissions." The record contains no similar affidavit from the staff judge advocate.

DISCUSSION

A. The Neutrality Requirement

Post-trial review is an important stage in the court-martial process. This stage culminates in the convening authority's highly discretionary decision to approve, reduce, or set aside the court-martial's findings and sentence.[4] When making that decision, the convening authority will consider not only any submissions by the defense,[5] but also a recommendation prepared by a staff judge advocate or legal officer.[6]

We have emphasized the importance of ensuring that the convening authorities and legal advisors who carry out "those important statutory responsibilities be, and appear to be, objective."[7] Maintaining these individuals' neutrality protects two important interests: (1) the accused's right to a fair post-trial review; and (2) the system's integrity. We

---

[4] See Art. 60, UCMJ, 10 U.S.C. § 860 (2000); Rule for Courts-Martial 1107 [hereinafter R.C.M.].

[5] See Art. 60(b), UCMJ; R.C.M. 1105.

[6] See Art. 60(d), UCMJ; R.C.M. 1106 (requiring staff judge advocate's or legal officer's recommendations in all general court-martial cases and special court-martial cases resulting in a bad-conduct discharge or confinement for one year).

[7] United States v. Dresen, 47 M.J. 122, 124 (C.A.A.F. 1997).

recognized the first interest when we noted that a recommendation prepared by "a biased legal officer [or staff judge advocate] could unfairly prejudice the convening authority's decision."[8] The Navy-Marine Corps Court recognized the second interest when it emphasized that "[t]he appearance of evil created when a staff judge advocate's recommendation is drafted by disqualified persons is to be avoided."[9]

Concern for both fairness and integrity suggests that these neutral roles cannot be filled by someone who has publicly expressed a view prejudging the post-trial review process's outcome. So, for example, we have held that a convening authority was disqualified from taking post-trial action in a cocaine and marijuana use case because of briefings during which he reportedly commented that people convicted of using drugs "should not come crying to him about their situations or their families[']."[10] These remarks required the convening authority's disqualification because they "reflect an inflexible attitude toward the proper fulfillment of post-trial responsibilities in

---

[8] United States v. Rice, 33 M.J. 451, 453 (C.M.A. 1991).

[9] United States v. McCormick, 34 M.J. 752, 755 (N-M.C.M.R. 1992) (citing United States v. Jolliff, 22 C.M.A. 95, 46 C.M.R. 95 (1973)).

[10] United States v. Davis, 58 M.J. 100, 103 (C.A.A.F. 2003).

cases involving convictions for wrongful use of controlled substances."[11]

Whether a staff judge advocate or convening authority is disqualified from participating in the post-trial review is a question of law that we review de novo. As we conduct our analysis, the defense "has the initial burden of making a prima facie case" for disqualification.[12]

### B. The Convening Authority

The convening authority was not disqualified. When the defense counsel challenged the convening authority's involvement in the post-trial process, she wrote, "If this article can in any way be imputed to him, he is disqualified from acting as the general court-martial convening authority in this case." But the record establishes that the article cannot be imputed to the convening authority.

The defense counsel argued that because the convening authority was the first person listed in the Bullseye's masthead, he must have known of and approved Captain Burke's article before it was published. Not so. In an uncontradicted affidavit, the convening authority has sworn that before the defense counsel's submission, "I was unaware of the article's

---

[11] Id.

[12] United States v. Wansley, 46 M.J. 335, 337 (C.A.A.F. 1997).

existence. I played no role in the preparation or publication of the article." This disproves the very premise on which the defense's challenge to the convening authority was based. Accordingly, the defense has not carried its burden of establishing a prima facie case that the convening authority was disqualified from executing his post-trial duties.

### C. The Staff Judge Advocate

In stark contrast to the convening authority's disavowal of any previous knowledge of Captain Burke's article, the staff judge advocate acknowledged that the article may be imputed to him. The addendum staff judge advocate's recommendation — a document bearing the staff judge advocate's signature and express concurrence — states, "The article can be imputed to your Staff Judge Advocate." The convening authority's indorsement to this addendum recommendation similarly refers to "the newspaper article authored by Capt Melissa Burke, imputed to my Staff Judge Advocate, and published by the Bullseye on 14 Sep 01."

The staff judge advocate could have disclaimed the article and participated in the post-trial review.[13] He did not. Rather, in what might have been a laudable exercise in candor,

---

[13] See id. at 337 (holding that trial counsel's statements in a post-trial article would not be imputed to the staff judge advocate, who expressly stated that the remarks were not made on his or the convening authority's behalf).

11

he wrote that the article could be imputed to him. But the consequence of that concession is that he could not perform the duties entrusted to a neutral staff judge advocate.

The article expressly stated that the unnamed accused "was not a good candidate for rehabilitation." Any reasonable observer who was familiar with the facts would understand that the unnamed accused was, in fact, Appellant. By agreeing that the article including this characterization could be imputed to him, the staff judge advocate created the impression that he had prejudged the appropriateness of clemency in this case. A reasonable observer would no longer feel confident that the staff judge advocate remained neutral when he advised the convening authority concerning Appellant's clemency request. Accordingly, the staff judge advocate's failure to disqualify himself was error.

### D. Remedy

A disqualified staff judge advocate's participation in the post-trial review process is a serious deficiency. As we have frequently observed, "a military accused's 'best hope for sentence relief from a court-martial judgment comes in the convening authority's action.'"[14] The staff judge advocate's recommendation "plays a pivotal role in an accused's chances for

---

[14] United States v. Edwards, 45 M.J. 114, 116 (C.A.A.F. 1996) (quoting United States v. Bono, 26 M.J. 240, 243 n.3 (C.M.A. 1988)).

12

relief. Thus, [the staff judge advocate's] disqualification in preparing this recommendation cannot be said to be a technical matter without impact on the outcome of these proceedings."[15]

Granting relief in this case is particularly appropriate because the trial defense counsel identified the problem and urged disqualification as a remedy. The staff judge advocate had an opportunity to avoid the issue, but chose not to.

As we have observed, "By definition, assessments of prejudice during the clemency process are inherently speculative. Prejudice, in a case involving clemency, can only address possibilities in the context of an inherently discretionary act."[16]

Accordingly, where post-trial errors occur, we will order a new review if the defense makes "some colorable showing of possible prejudice."[17] Appellant has satisfied this low standard for obtaining a new post-trial review.

The defense counsel submitted a combined response to the staff judge advocate's recommendation and clemency request that went well beyond a plea for a reduced sentence. The defense submission asked the convening authority to set aside the

---

[15] Id. (citation omitted).

[16] United States v. Lowe, 58 M.J. 261, 263 (C.A.A.F. 2003).

[17] United States v. Wheelus, 49 M.J. 283, 289 (C.A.A.F. 1998).

findings and sentence on the grounds that Appellant had been treated unfairly in the court-martial process.

The defense submission contended that the case should never have been referred to a general court-martial. According to the defense counsel, specific items portrayed as facts in the staff judge advocate's Article 34[18] pretrial advice letter allegedly contained false or exaggerated information on matters that were neither minor nor inconsequential. Based on this analysis, the defense claimed that the staff judge advocate's Article 34 advice overstated the seriousness of Appellant's offenses. The defense counsel also stated that she had not been provided with a copy of the Article 34 advice letter, in violation of R.C.M. 406(c), so she had been unable to make a timely comment to challenge the letter's accuracy.

The defense submission also observed that Appellant was found not guilty of the two ecstasy distribution charges he faced at the general court-martial. The defense argued that Appellant's actual misconduct, setting aside the unsubstantiated distribution charges, warranted nonjudicial punishment rather than a general court-martial.

The defense's post-trial submission also argued that two errors occurred at trial. The first involved a defense

---

[18] 10 U.S.C. § 834 (2000).

objection to the introduction of the pictures that Appellant had viewed.  The defense objected under Military Rule of Evidence 403 that the evidence was more prejudicial than probative, and the military judge overruled the objection without articulating an analysis under the required balancing test.  The defense submission also contended that a portion of the trial counsel's sentencing argument stating that Appellant "should not be allowed to remain in the Air Force" was impermissible under United States v. Motsinger.[19]  The defense counsel acknowledged that she had not objected to the argument, which raised the possibility of waiver.  But she noted that the convening authority retained "the power to cure" the alleged error.

The defense counsel's post-trial submission included challenges to the fairness of the pretrial processing of Appellant's case, as well as of the sentencing hearing.  These challenges required a fair and objective analysis by the staff judge advocate before the convening authority acted.  Because the defense submission included allegations of legal error, the staff judge advocate's advice to the convening authority was particularly important.

Appellant was entitled to a post-trial action by a convening authority who had been advised by a properly-qualified staff judge advocate.  In this case, that advice was instead

---

[19]  34 M.J. 255 (C.M.A. 1992).

15

given by a staff judge advocate who should have been disqualified from acting.  In light of the issues included in the defense's post-trial submission, the lack of advice from a properly-qualified staff judge advocate constitutes a "colorable showing of prejudice," warranting a new post-trial review and action.

In opposing remand for a new post-trial review, the Government points to the convening authority's affidavit in which he stated, "I am confident that I would have approved the sentence without reference to the staff judge advocate recommendations based on my independent review of the evidence and defense submissions."  But at oral argument, the Government conceded that we cannot "postulate what [the convening authority] might have done" if the staff judge advocate had recommended clemency.  It would be particularly difficult to predict what the convening authority would have done had the staff judge advocate advised him that one of the defense's allegations of legal error was meritorious.  So the convening authority's affidavit does not erase the defense's colorable showing of prejudice.

We do not mean to imply any view about what a neutral staff judge advocate should have recommended or how the convening authority should have acted.  It is the convening authority's "statutory duty, not ours, to consider what action is

16

appropriate in the circumstances."[20]  Our statutory duty is to determine whether "the law is adhered to, established procedures are followed, and staff judge advocates do their jobs."[21]  In this case, the staff judge advocate did not do his job correctly when he declined to disqualify himself.  Remanding the case for a new convening authority's action will ensure that Appellant is not prejudiced by that failure.  It will also ensure that, regardless of the new action's outcome, the military justice system's integrity will be protected from a disqualified individual influencing the outcome of Appellant's post-trial review.

### DECISION

We reverse the decision of the United States Air Force Court of Criminal Appeals and set aside the convening authority's action.  We return the record to the Judge Advocate General of the Air Force for a new post-trial review, including a recommendation by a staff judge advocate who is not disqualified.

---

[20]  United States v. Lee, 50 M.J. 296, 298 (C.A.A.F. 1999).

[21]  United States v. Johnston, 51 M.J. 227, 229 (C.A.A.F. 1999).

CRAWFORD, Chief Judge (dissenting):

Even assuming Captain Burke's newspaper article should have disqualified the staff judge advocate and convening authority, I would conclude that any error in this case was harmless.

Pursuant to his pleas, Appellant was convicted of wrongfully using a government computer to access the Internet and display pornography and sexually explicit material. Appellant also pleaded guilty to dereliction of his duties as a hospital respiratory technician on two occasions. On the first occasion, February 19, 2000, Appellant failed to give the appropriate medication to his patients to allow them to breathe. On the second occasion, February 23, 2000, Appellant placed a tight-fitting mask over a patient's mouth and nose to assist the patient's breathing, but failed to verify the presence of supplemental oxygen. In less than five minutes, an alarm went off indicating the patient's oxygen had fallen below 90%. Letters of counseling excluded from evidence showed that Appellant had also improperly performed his duties as a hospital technician in April and June 1999, and had previously received nonjudicial punishment for three assaults, drunk and disorderly conduct, and communicating a threat.

Based on the information contained in the record, including the serious offenses described above, it is extremely unlikely that a new staff judge advocate or convening authority would

have granted Appellant any relief.  For these reasons, I

conclude that any error in failing to disqualify the staff judge

advocate and convening authority was harmless.

BAKER, Judge (dissenting):

I agree with the majority's conclusion that the staff judge advocate's failure to disqualify himself was error. "A disqualified staff judge advocate's participation in the post-trial review process is a serious deficiency." ___ M.J. (13). I also agree with the framework used by the majority to assess prejudice. "By definition, assessments of prejudice during the clemency process are inherently speculative. Prejudice, in a case involving clemency, can only address possibilities in the context of an inherently discretionary act." ____ M.J. (13). Additionally, I agree with the majority's consideration of legal policy. "Granting relief in this case is particularly appropriate because the trial defense counsel identified the problem and urged disqualification as a remedy. The staff judge advocate had an opportunity to avoid the issue, but chose not to." ____ M.J. (13).

However, I respectfully dissent from the result reached by the majority. I do not believe there is any possibility, other than that found in the logic that we cannot ultimately know how someone might have acted had events been different, that Appellant would have received clemency from the convening authority on his sentence in light of the offenses Appellant stipulated that he

committed. Appellant pleaded and was found guilty of violating a general regulation by viewing pornography on a government computer while on duty. He also pleaded guilty to, and was convicted of, willful dereliction of his duties as a hospital respiratory technician for neglecting patients while he viewed pornography, and for falsely annotating the medical charts of respiratory care patients.

According to the stipulation of fact, Appellant was responsible for giving nebulizer treatments to patients and annotating the treatments on their charts to include "time, breath sounds, pulse rate, duration and tolerance of the treatment, peak flow, oxygen saturation and cough." "During these treatments, the patients inhale medication which makes it easier for them to breathe." On February 19, Appellant gave nebulizer treatments to three patients at approximately 1200. At this same time, Appellant falsely annotated the patient's charts to show that he had given nebulizer treatments to the three patients at 1600 as well. The stipulation of fact indicates that Appellant's actions were discovered by a nurse at 1500. For these actions, Appellant received a bad conduct discharge, reduction to E-1, and no confinement.

Of course, we cannot ultimately know if a another staff judge advocate's recommendation would have led to a

2

different clemency result, but we do know the stipulated facts and circumstances of Appellant's offenses, including Appellant's neglect of his patients and his viewing of pornography on duty, at work. The convening authority swore in an affidavit, "I am confident that I would have approved the sentence without reference to the staff judge advocate recommendations based on my independent review of the evidence and defense submissions." Thus, this is not a case where Appellant did not have an opportunity to make his case or where the convening authority was acting alone pursuant to contested facts or an erroneous statement of the offenses. Finally, with the exception of Appellant's assertion of certain legal errors identified to the convening authority, Appellant did not present as part of his clemency package factors typically suggestive of possible clemency such as a stellar record, honorable combat service, remorse, or dependent obligations and needs.

As a result, although the staff judge advocate's error in this case was evident, based on this record I do not believe there was any actual possibility of a different outcome during the convening authority's review. Therefore, the error in question was harmless. For this

reason, I respectfully dissent from the result reached by the majority.