UNITED STATES, Appellee,

v.

Charles L. POWELL, Aviation Main-
tenance Administrationman Air-
man, U.S. Navy, Appellant.

No. 97–0549.
Crim.App. No. 96–0698.

U.S. Court of Appeals for
the Armed Forces.

Argued March 5, 1998.

Decided Oct. 1, 1998.

For Appellant: *Lieutenant Syed N. Ahmad,* JAGC, USNR (argued); *Lieutenant E. Rubiella,* JAGC, USNR.

For Appellee: *Lieutenant Commander Christian L. Reismeier,* JAGC, USN (argued); *Colonel Charles Wm. Dorman,* USMC, and *Commander D.H. Myers,* JAGC, USN (on brief); *Captain Christopher N. Hamilton,* USMC.

*Opinion of the Court*

GIERKE, Judge:

A military judge sitting as a special court-martial convicted appellant, pursuant to his pleas, of four specifications of unauthorized absence, two specifications of signing a false official document, and two specifications of presenting a false claim, in violation of Articles 86, 107, and 132, Uniform Code of Military Justice, 10 USC §§ 886, 907, and 932, respectively. The adjudged and approved sentence provides for a bad-conduct discharge, confinement for 3 months, forfeiture of $500.00 pay per month for 3 months, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence. 45 MJ 637 (1997).

This Court granted review of the following issue:

> WHETHER THE LOWER COURT ERRED, AS A MATTER OF LAW, WHEN IT DETERMINED THAT, EVEN THOUGH THE SENTENCING TESTIMONY OF THE GOVERNMENT'S SENTENCING WITNESSES AMOUNTED TO PLAIN ERROR, NO RELIEF WAS WARRANTED BECAUSE SUCH ERROR DID NOT SERIOUSLY AFFECT THE FAIRNESS, INTEGRITY, OR PUBLIC REPUTATION OF THE COURT-MARTIAL, NOR DID IT AMOUNT TO A MISCARRIAGE OF JUSTICE. (*SEE UNITED STATES V. DEMERSE,* 37 MJ 488, 492 (CMA 1993)).

For the reasons set out below, we affirm the decision of the Court of Criminal Appeals.

The operative facts are uncontested. The four unauthorized absences were for periods of 20 minutes (specifications 1 and 2 of Charge I), 55 minutes (specification 3 of Charge I), and 40 minutes (specification 4 of Charge I). In each case, appellant had been late for work. The remaining offenses arose from appellant's claims for travel allowances and housing allowances, which were false because appellant's family had not traveled to his duty station and was not residing with him.

During the sentencing hearing, three prosecution witnesses testified about appellant's lack of potential for rehabilitation, with no objections from the defense. Appellant's division officer, Lieutenant (LT) Vaughn, testified about appellant's marital problems and his financial irresponsibility. He testified that he counseled appellant "four or five times" for problems "that the chain of command was not able to rectify." He testified that appellant had received financial counseling and financial aid because he had problems paying his rent. LT Vaughn testified that he referred appellant to a chaplain's counseling program to assist in communications with his wife, but that he failed to attend the program. Appellant's failure to accept counseling led LT Vaughn to conclude that stronger administrative measures or nonjudicial punishment might be warranted. LT Vaughn testified that he referred appellant to the next superior officer, who told appellant "that he was going to pay his bills, he was going to start getting good—start adhering to the advice that the chain of command and others were providing for him or he would go." Based on appellant's disregard for the efforts of his superiors to assist him, LT Vaughn concluded that appellant's potential for rehabilitation "would be below average."

Senior Chief Petty Officer Dean, one of appellant's former supervisors, testified that appellant frequently was late for work and had financial problems. He testified that appellant was not receptive to counseling or assistance, and that he did not think any further rehabilitation efforts would be effective.

Chief Petty Officer Rhoads, also one of appellant's former supervisors, testified about appellant's frequent tardiness, his loss of his military identification card, his finan-

cial irresponsibility, and his bad checks. She testified that appellant seemed reluctant to seek or accept assistance. Based on her contacts with appellant, she concluded that appellant's potential for rehabilitation was "less than average."

Appellant made an unsworn statement in which he asked the military judge to punish him and not his family. He told the military judge that when he submitted the false claims, he was financially desperate and did not realize that it would cause his family to suffer. He concluded by asking the military judge "to not give me a BCD so I will be able to get some type of job when I get out of the Navy, support them and after I pay the money back to the Navy."

Defense counsel's sentencing argument urged the military judge not to impose a bad-conduct discharge. Defense counsel referred to "the prosecution's own witnesses" to emphasize appellant's financial problems and argued that a punitive discharge would exacerbate appellant's financial problems by further limiting his future ability to support himself and his family. Defense counsel asked the military judge to "remember that [an administrative discharge] is an option and the scourge of a bad-conduct discharge ... is not necessary."

Before announcing the sentence, the military judge stated on the record that she considered the testimony of the three prosecution witnesses and appellant's unsworn statement in determining a sentence.

The court below held that admission of the testimony about specific conduct was plain error. *See* RCM 1001(b)(5), Manual for Courts–Martial, United States (1995 ed.). The court below declined to grant sentence relief, however, because it concluded that the plain error "did not seriously affect the fairness, integrity, or public reputation of the court-martial," and because "relief is not required to avoid a miscarriage of justice." 45 MJ at 641.

Appellant argues that a Court of Criminal Appeals must grant relief if it finds plain error. The Government argues that a Court of Criminal Appeals has the discretion to decline to grant relief where the fairness,

integrity, or public reputation of the proceedings have not been affected.

The granted issue requires us to decide whether the Court of Criminal Appeals correctly applied the plain error doctrine. Two subsidiary questions are involved: (1) What is "plain error" in military appellate practice?, and (2) If a Court of Criminal Appeals finds plain error, must it grant relief? These are questions of law that we review *de novo*. *See* S. Childress & M. Davis, 1 *Federal Standards of Review*, § 2.14 (2d ed. 1992).

Article 59(a), UCMJ, 10 USC § 859(a), provides that "[a] finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." Article 59(a) was intended by Congress to preclude reversals for minor technical errors "which do not prejudice the rights of the accused." *United States v. Riley*, 47 MJ 276, 281 (1997) (Gierke, J., concurring), citing Hearings on H.R. 2498 Before a Subcomm. of the House Armed Services Comm., 81st Cong., 1st Sess. 1174–75 (1949).

Exercising his authority under Article 36, UCMJ, 10 USC § 836, the President has promulgated Mil.R.Evid. 103(a), Manual, *supra*. Mil.R.Evid. 103(a) is taken from Fed. R.Evid. 103(a), with several changes. While the federal rule provides that "[e]rror may not be predicated upon a ruling ... unless a substantial right of a party is affected," the military rule provides that "[e]rror may not be predicated upon a ruling ... unless the ruling materially prejudices a substantial right of a party." The requirement that an error "materially prejudice a substantial right" was inserted in Mil.R.Evid. 103(a) in place of the federal rule's requirement that an error affect a substantial right in order to make Mil.R.Evid. 103(a) consistent with Article 59(a). Drafters' Analysis of Mil.R.Evid. 103(a), Manual, *supra* at A22–2. Mil.R.Evid. 103(a) "prescribes a standard by which errors will be tested on appeal." *Id.* at A22–3.

Mil.R.Evid. 103(d), the "plain error" exception to waiver, provides, "Nothing in this rule precludes taking notice of plain errors that

materially prejudice substantial rights although they were not brought to the attention of the military judge." This rule was likewise taken from Fed.R.Evid. 103(d), with the same change of terminology, substituting "materially prejudices" for "affecting" substantial rights. Drafters' Analysis of Mil. R.Evid. 103(d), *supra.*

The Notes of Advisory Committee on 1972 Proposed Rules indicate that Fed.R.Evid. 103(d) is taken from Fed.R.Crim.P. 52. Fed. R.Crim.P. 52(a) provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 52(b) provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." There is no military counterpart to Fed.R.Crim.P. 52 in the Manual for Courts–Martial.

Article 66(c), UCMJ, 10 USC § 866(c) (1994), provides that a Court of Criminal Appeals "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Courts of Criminal Appeals enjoy much broader appellate authority than civilian intermediate courts or our Court, which is empowered by Article 67, UCMJ, 10 USC § 867 (1994), to "take action only with respect to matters of law." On the other hand, Article 66(c) also limits appellate authority, because it provides that Courts of Criminal Appeals "may only affirm" that which they independently find "correct in law and fact" and that which they "determine[ ], on the basis of the entire record, should be approved."

In *United States v. Fisher,* 21 MJ 327 (1986), this Court considered whether there was "plain error," as the term is used in RCM 1005(f), pertaining to a military judge's instructions. This Court held that plain error "must not only be both obvious and substantial, it must also have 'had an unfair prejudicial impact on the jury's deliberations.'" *Id.* at 328, citing *United States v. Young,* 470 U.S. 1, 16–17 n. 14, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

The Supreme Court's decision in *Young,* on which *Fisher* relies, was made in the context of discretionary review. Explaining the requirement that plain error have "an unfair prejudicial impact on the jury's deliberations," the Supreme Court said:

> To do otherwise could well lead to having appellate courts indulge in the pointless exercise of reviewing "harmless plain errors"—a practice that is contrary to the draftsmen's intention behind Rule 52(b) ... and one that courts have studiously avoided and commentators have properly criticized....

*Id.*

In *United States v. Olano,* 507 U.S. 725, 732–34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Supreme Court again defined plain error under Fed.R.Crim.P. 52(b), characterizing it as a "limitation on appellate authority," and having three elements: (1) that there be an "error"; (2) that the error be "plain," that is, "'clear' or, equivalently, 'obvious'"; and (3) that "the plain error 'affec[t] substantial rights.'" Although the Court recognized that in most cases plain error will have affected the outcome, it expressly declined to decide "whether the phrase 'affecting substantial rights' is always synonymous with 'prejudicial.'" 507 U.S. at 735, 113 S.Ct. 1770. The Court did, however, observe that, "[i]f the forfeited error is 'plain' and 'affect[s] substantial rights,' the court of appeals has authority to order correction, but is not required to do so." *Id.*

In *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), the Supreme Court again visited Rule 52(b). This time the Supreme Court focused on whether "an appellate court can correct an error not raised at trial." 520 U.S. at 466–67, 117 S.Ct. at 1549. The Court recited the three elements of plain error outlined in *Olano* and held:

> If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error "'"seriously affect[s] the fairness,

integrity, or public reputation of judicial proceedings." ' "

*Id.* (citations omitted).

In *United States v. Claxton,* 32 MJ 159, 162 (1991), this Court relied on the plenary review authority of Article 66(c) to hold that a Court of Military Review (now the Court of Criminal Appeals) is not constrained from taking notice of errors by the principles of waiver and plain error. At the same time, this Court held that "our own review authority ... is much more limited" under Article 67(c).

Most recently, in *United States v. Riley,* 47 MJ 276 (1997), this Court reiterated the *Fisher* three-element definition of plain error. The issue in *Riley,* however, did not involve the lower court's application of the plain error doctrine but, rather, whether this Court should exercise its jurisdiction to correct a military judge's evidentiary error.

■ Based on the foregoing, we draw four conclusions. First, the policy underlying the constraining language of Fed.R.Crim.P. 52(b), to avoid "the pointless exercise of reviewing 'harmless plain errors,' " is applicable only to appellate courts exercising discretionary review. Thus, it is inapplicable to Courts of Criminal Appeals, for whom an independent review of the entire record is mandatory. *See United States v. Claxton, supra.*

Second, while Courts of Criminal Appeals are not constrained from taking notice of otherwise forfeited errors, they are constrained by Article 59(a), because they may not reverse unless the error "materially prejudices the substantial rights of the accused." Articles 59(a) and 66(c) serve to bracket their authority. Article 59(a) constrains their authority to reverse; Article 66(c) constrains their authority to affirm.

Third, the *Olano* definition of plain error has limited applicability to Courts of Criminal Appeals because (1) it was decided in the context of courts exercising discretionary review under the federal rules, and (2) it interprets the federal rules, which are somewhat different from the military rules.

Fourth, the military rules have a higher threshold than the federal rules in that they require plain error to "materially prejudice" substantial rights. The waiver and plain error doctrines in military appellate practice are defined in Article 59(a), Mil.R.Evid. 103, RCM 920(f), RCM 1005(f), and our decision in *Fisher.* Accordingly, we hold that the Court of Criminal Appeals erred by applying the *Olano* definition of plain error.

■ The next question is whether a Court of Criminal Appeals must grant relief if it finds plain error. The Supreme Court in *Young* recognized that there can be "harmless plain error[s]" under the federal rules, but held that the drafters of Fed.R.Crim.P. 52(b) intended to preclude federal appellate courts from squandering judicial resources by reviewing them. Although the Supreme Court was not addressing plain error in *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), that decision provides a pertinent example of an error that "affects substantial rights" but, nevertheless, does not necessarily warrant reversal of a conviction. In *Fulminante,* the Supreme Court recognized that a confession is one of the most powerful types of evidence but, nevertheless, the Court held that the erroneous admission of an involuntary confession could be harmless beyond a reasonable doubt, because of other overwhelming evidence of guilt.

Because of its broad mandate under Article 66(c) to decide cases "on the basis of the entire record," and to affirm "only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved," a Court of Criminal Appeals must review errors that are asserted on appeal but not raised at trial and determine their impact, if any, on an appellant's "substantial rights."

■ Because we held in *Claxton* that the court below is not constrained by the principles of waiver and plain error from taking notice of errors, there is no question that the court below properly took notice of the asserted error in this case. Under a plain error analysis, appellant had the burden of

persuading the court below that there was plain error. Only after appellant met his burden of persuasion did the burden shift to the Government to show that the error was not prejudicial. *See Olano,* 507 U.S. at 734, 113 S.Ct. 1770.*

In *Olano,* Justice O'Connor makes it clear that the definition of plain error under the federal rule has three elements, not four. *Id.* ("The third and final limitation on appellate authority under Rule 52(b) is that the plain error 'affec[t] substantial rights.'"). The fourth element added by Chief Justice Rehnquist in *Johnson* does not change the definition of plain error but, instead, defines when a court may exercise its discretionary power to correct a plain error.

Similarly, Article 59(a) limits military appellate courts from reversing a finding or sentence for legal error "unless the error materially prejudices the substantial rights of the accused." Article 59(a) parallels the third *Olano* element, but with significant differences as noted above. Nothing in Articles 59, 66, or 67 mandates reversal when plain error, as defined in *Olano,* is found by an appellate court.

■ The critical question in this case is: When an error not objected to at trial is plain and affects substantial rights (*i.e.,* when the error meets the three prongs of *Olano* ), does it also satisfy the additional requirement of Article 59(a) that it "materially prejudice[ ] the substantial rights of the accused?" By holding that there was plain error under the *Olano* test, the court below held only that the error "*affects* substantial rights." This holding falls short of the requirement for reversal set out in Article 59(a), that an error "*materially prejudice* substantial rights." Although *Johnson* applies only to courts exercising discretionary powers of review, we note that the opinion of the court below would not trigger relief under *Johnson* in view of *Johnson's* holding that an appellate court should not correct a plain error unless the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Finally, the lower

court's holding falls short of the *Fisher* requirement that plain error have "an unfair prejudicial impact on the jury's deliberations." 21 MJ at 328. Accordingly, we hold that the court below was not required to reverse after finding plain error under the *Olano* test.

■ We agree with the court below that the error did not justify reversing appellant's sentence. While the testimony about appellant's repeated tardiness was inadmissible as evidence of specific conduct and prohibited on direct examination by RCM 1001(b)(5), it merely repeated what appellant admitted by his guilty pleas and his responses during the plea inquiry. The evidence of "financial irresponsibility" and bad checks was used by defense counsel to argue that a bad-conduct discharge should not be imposed. Appellant's loss of his identification card might be characterized as neglect or misconduct, but was *de minimis.* Admission of this evidence falls short of the standard for prejudicial plain error established by Article 59(a) and *Fisher.*

■ We have also considered whether the testimony about appellant's rehabilitative potential might be construed as an impermissible euphemism for recommending that appellant be given a bad-conduct discharge. *See* RCM 1001(b)(5)(D); *United States v. Ohrt,* 28 MJ 301, 305 (CMA 1989). In this regard, we note that the witnesses stopped short of testifying that appellant had "no potential for continued service" and limited their testimony to opining that his potential for rehabilitation was poor. We are confident that the military judge knew and correctly applied the law, and "placed the testimony in proper perspective." *United States v. Horner,* 22 MJ 294, 296 (CMA 1986).

### Decision

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges CRAWFORD and EFFRON concur.

---

\* In cases involving constitutional error, the Government must convince an appellate court beyond a reasonable doubt that the error was not prejudicial. *See United States v. Adams,* 44 MJ 251, 252 (1996).

SULLIVAN, Judge (concurring in the result):

The majority opinion in this case muddies the water in the area of plain error. *See United States v. Fisher,* 21 MJ 327 (CMA 1986). In my view, our decision in *Fisher* was based on the Supreme Court's decision in *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). Our decision in this case, likewise, should be based on the more recent Supreme Court decisions in *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), and *John-son v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). Fashioning a new rule on the law of plain error on the basis of the splintered equity decision of this Court in *United States v. Claxton,* 32 MJ 159, 162 (CMA 1991), is unwarranted. We should be following recent decisions of the Supreme Court, not a decision of this Court where all three judges sitting on that case wrote separate opinions.

I would follow *Olano* and affirm the Court of Criminal Appeals.