**UNITED STATES, Appellee,**

v.

**Private E1 Jonathan G. SCALO, United States Army, Appellant.**

**ARMY 20020624.**

U.S. Army Court of Criminal Appeals.

18 Dec. 2003.

---

For Appellant: Major Jeanette K. Stone, JA; Captain Kathleen D. Schmidt, JA (on brief).

For Appellee: Lieutenant Colonel Margaret B. Baines, JA.

Before the Court Sitting En Banc.

1. Block 8 of the charge sheet, DD Form 458, also recorded no pretrial restraint.

## OPINION OF THE COURT

CHAPMAN, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, in accordance with his pleas, of wrongful use of marijuana (four specifications), wrongful possession of marijuana (three specifications), and forgery (two specifications), in violation of Articles 112a and 123, Uniform Code of Military Justice, 10 U.S.C. §§ 912a and 923 [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, confinement for fourteen months, and forfeiture of all pay and allowances. The convening authority approved the adjudged sentence, but pursuant to a pretrial agreement, suspended confinement in excess of twelve months for twelve months. The case is before this court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

Appellant asserts no assignment of error and submits the case to this court on its merits. Appellant comments in a footnote, however, that the staff judge advocate's (SJA) post-trial recommendation (SJAR) failed to advise the convening authority of the correct nature and duration of appellant's pretrial restraint. We decline to grant relief because appellant's failure to comment on the error in his Rule for Courts–Martial [hereinafter R.C.M.] 1105 submission or to assign as an error to this court waives any claim of error. *See* R.C.M. 1106(f)(4).

## FACTUAL BACKGROUND

The SJAR erroneously advised the convening authority that there had been no pretrial restraint imposed upon appellant.[1] In fact, appellant had been restricted to the limits of Fort Stewart, Georgia, for forty-four days until his court-martial. Information regarding appellant's restriction is contained in a stipulation of fact and was admitted at trial without objection.[2] (R. at Prosecution Exhibit (PE) 1).

Imposition of appellant's restraint was a direct consequence of his alleged absence

2. The military judge read the stipulation of fact during the providence inquiry and, thus, was aware of the restraint as a mitigating circumstance when he adjudged appellant's sentence.

without leave (AWOL) committed prior to referral of charges.[3] Although appellant could not go beyond the confines of Fort Stewart, there was no other restraint on his liberty. He was free to go anywhere on the installation without an escort; he had no sign-in requirements; nor was he prohibited from wearing civilian clothes while off duty.

## SJAR REQUIREMENTS–PRETRIAL RESTRAINT

Article 60(d), UCMJ, 10 U.S.C. § 860(d), and R.C.M. 1106(a) require the SJA to prepare and provide to the convening authority a written recommendation before the convening authority takes action in a general court-martial or a special court-martial that includes a sentence to a bad-conduct discharge or confinement for one year. The SJA shall use the record of trial to prepare the recommendation (R.C.M. 1106(d)(1)), and include, *inter alia,* "[a] statement of the nature and duration of any pretrial restraint" (R.C.M. 1106(d)(3)(D)). Rule for Courts–Martial 304 defines pretrial restraint as "moral or physical restraint on a person's liberty ... [and] may consist of conditions on liberty, restriction in lieu of arrest, arrest, or confinement." [4]

## WAIVER

Trial defense counsel failed to object to the absence of information in the SJAR regarding the nature and duration of appellant's pretrial restraint. *See* R.C.M. 1106(f)(4); R.C.M. 502(d)(6) discussion (E)(v) (defense counsel's post-trial duty to examine the SJAR and note any errors or omissions). Rule for Courts–Martial 1106(f)(6) "provides that defense counsel's failure to comment on any matter in the post-trial recommendation in a timely manner waives any later claim of error, unless it rises to the level of plain

error." *United States v. Kho,* 54 M.J. 63, 65 (C.A.A.F.2000); *see United States v. Wellington,* 58 M.J. 420, 427 (C.A.A.F.2003). Thus, because appellant's trial defense counsel failed to comment on the SJAR error, this court must test for "plain error." *See Wellington,* 58 M.J. at 427.

## THE "PLAIN ERROR" DOCTRINE

■ This court's application of the "plain error" doctrine to SJAR errors begins with Article 59(a), UCMJ, 10 U.S.C. § 859(a). A service Court of Criminal Appeals may not set aside a finding or sentence or a portion thereof based upon a legal error unless the error "materially prejudices the substantial rights of the accused." UCMJ art. 59(a). Rule for Courts–Martial 1106(f)(6) states that, unless objected to by the defense, any error in the SJAR is waived absent "plain error." Error amounts to "plain error" when the error is plain and obvious, and when the error materially prejudices a substantial right of an appellant. *See Wellington,* 58 M.J. at 427; *Kho,* 54 M.J. at 65 (citing *United States v. Finster,* 51 M.J. 185, 187 (C.A.A.F.1999) and *United States v. Powell,* 49 M.J. 460, 463, 465 (C.A.A.F.1998)). Ordinarily, appellant has the burden of establishing these prerequisites for "plain error." *Kho,* 54 M.J. at 65; *United States v. Wilson,* 54 M.J. 57, 59 (C.A.A.F.2000). But in the present case, appellant's defense counsel does not assert as error on appeal the incorrect SJAR, and, of course, does not allege prejudice as a consequence of the SJAR error.

■ Appellant's silence does not preclude this court, however, from addressing prejudicial error on its own motion. *Finster,* 51 M.J. at 188 (citing UCMJ art. 66(c)). Article 66, UCMJ, constrains this court's authority

3. Appellant left his unit "without pass or leave on or about 19 March 2002" and "returned to military control on or about 20 April 2002." (R. at PE 1).

4. The failure to correctly note the pretrial restraint in the SJAR is an all-too-common error. It is clear from many of the records we review that there is a fundamental misunderstanding by some SJAs and counsel that R.C.M. 1106(d)(3)(D) requires the SJA to include in his or her recom-

mendation concise information as to the nature and duration of *any pretrial restraint.* Rule for Courts–Martial 1106(d)(3)(D) does not mandate reporting only restraint that awards an appellant pretrial confinement credit and/or restraint that might rise to the level of requiring a confinement credit analysis. Rather, the rule requires inclusion of all "moral or physical restraint on a person's liberty" imposed before and during disposition of charges.

to affirm "only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." *See United States v. Tardif,* 57 M.J. 219, 224 (C.A.A.F.2002). Thus, we must undertake an independent review to determine if the SJAR error is "plain error" that materially prejudices appellant's substantial rights.

■ To determine if a SJAR error, not raised on appeal, amounts to "plain error," this court applies the analytical framework found in *Powell* and its progeny: (1) whether there is an error; (2) whether the error is plain or obvious; and (3) whether the error materially prejudices a substantial right of appellant. *Powell,* 49 M.J. at 463–65; *see also Wilson,* 54 M.J. at 59; *Kho,* 54 M.J. at 65; *Finster,* 51 M.J. at 187. Thus, when a reviewing service Court of Criminal Appeals identifies a SJAR error as "plain error," it has, by definition, met the Article 59(a), UCMJ, standard for granting corrective relief. *Compare Powell,* 49 M.J. at 465 (holding that the Navy–Marine Corps Court of Criminal Appeals erred by solely applying the *United States v. Olano,* 507 U.S. 725, 732–34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), "plain error" standard, and failing to include the higher Article 59(a), UCMJ, threshold) *with United States v. Southwick,* 53 M.J. 412, 414 (C.A.A.F.2000) (holding that a "clear" error did not amount to "plain error" because a substantial right was not "materially prejudiced"). Applying this framework to the facts of this case, we find no "plain error."

## APPLICATION OF THE "PLAIN ERROR" DOCTRINE

■ There is no question that the government erred when the SJA failed to advise the convening authority of the nature and duration of appellant's pretrial restraint. This error is plain and obvious, thus meeting the first two prongs of *Powell.* All pretrial restraint should have been included in the SJAR. R.C.M. 1106(d)(3)(D). Additionally, all parties at trial were aware of appellant's pretrial restraint, as evidenced by a stipula-

tion of fact that specifically referred to the nature and duration of that restraint.

Although the error is plain and obvious, it fails to meet the third prong of our analytical model. Given the entire record in this case, and the nature and extent of the restraint, the error did not materially prejudice a substantial right of appellant.

This court should not presume "material prejudice" unless the error "had an unfair prejudicial impact on the [action taken]." *United States v. Fisher,* 21 M.J. 327, 328 (C.M.A.1986) (quoting *United States v. Young,* 470 U.S. 1, 16 n. 14, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)). The SJA's failure to include in the SJAR the rather *de minimus* restraint imposed upon appellant did not materially prejudice appellant's opportunity to obtain clemency from the convening authority. Appellant's restraint was authorized under R.C.M. 304 and imposed upon appellant for a legitimate, nonpunitive, governmental purpose—to ensure appellant's presence for trial in light of his prior AWOL status before referral of charges. Although appellant could not leave Fort Stewart, there was no further restraint on his liberty. He was free to go anywhere on the installation without an escort; he had no sign-in requirements; nor was he prohibited from wearing civilian clothes while off duty. Pulling appellant's pass privileges was both reasonable and appropriate given that he was a possible flight risk and due to the nature of his crimes (forgery; wrongful use and possession of marijuana on multiple occasions).

We are satisfied, under the facts of this case, that an accurate description in the SJAR of appellant's restriction would not have affected the sentence as approved by the convening authority. This court should adhere to the cautionary advice of our superior court to use the "plain error" doctrine "sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *Fisher,* 21 M.J. at 328–29 (quoting *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). Given the entire record in this case, there is no basis for concluding that the error "seriously affect[ed] the fairness, integrity or public reputation of [these] judicial proceed-

ings." *Id.* at 328 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)). Whatever effect, if any, knowledge of appellant's restriction could have had on the convening authority's action, its absence certainly does not undermine the fundamental fairness of the judicial process or contribute to a miscarriage of justice.

Therefore, although the SJAR failed to advise the convening authority of the nature and duration of appellant's pretrial restraint, we hold that the error does not amount to "plain error." The error did not materially prejudice a substantial right of appellant. Thus, appellant's failure to comment on the error in his R.C.M. 1105 submission, and in his appeal to this court, waives any claim of error.

## A *WHEELUS* [5] ANALYSIS

Our brothers concurring in the result would have us utilize the test enunciated in *Wheelus* to determine if this SJAR error warrants relief. For the reasons given below, we decline to take such an approach and conclude that a *Wheelus* analysis does not apply to the facts of this case.

In *Wheelus,* our superior court set forth a different process for appellate review of SJAR errors that are raised for the first time at the appellate level. "First, an appellant must allege the error at the Court of Criminal Appeals." *Id.* at 288. This means that if appellant or trial defense counsel failed to address the alleged error pursuant to R.C.M. 1106(f)(4), either appellate defense counsel must assign the alleged SJAR deficiency as an error in a brief to this court, or appellant must personally bring the deficiency to the attention of this court pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982). "Second, an appellant must allege prejudice as a result of the error." *Wheelus,* 49 M.J. at 288. Essentially, appellant must describe how the alleged omission or misstatement or other SJAR error (uncorrected before action) detrimentally impacted appel-

lant. "Third, an appellant must show what he would do to resolve the error if given such an opportunity." *Id.* Appellant must request specific relief, such as a new review and action, or another form of relief within this court's broad authority to modify the findings and/or sentence in accordance with Article 66(c), UCMJ. If appellant meets this *Wheelus* "threshold," he only needs to make a "colorable showing of possible prejudice" to require a Court of Criminal Appeals to either provide "meaningful relief" or return the case for a new review and action. *Id.* at 289.

Because appellant failed to allege the SJAR error to this court, the *Wheelus* "threshold" for appellate relief has not been satisfied. Had appellant satisfied the *Wheelus* "threshold" for relief and made at least "some colorable showing of possible prejudice" as a consequence of the SJAR error, the Article 59(a), UCMJ, standard of material prejudice to a substantial right would be satisfied. As such, this court would grant meaningful relief.[6] Appellant and his detailed counsel at trial and on appeal, however, have elected not to object or claim error, and thus allege prejudice, as a result of the SJAR's misstatement of the pretrial restraint. Thus, the *Wheelus* analysis does not apply to the case at bar.

## CONCLUSION

After careful consideration of the entire record, including those matters personally raised by appellant pursuant to *Grostefon,* 12 M.J. 431, we hold the findings of guilty and the sentence as approved by the convening authority correct in law and fact.

Accordingly, the findings of guilty and the sentence are affirmed.

Chief Judge CAREY, Senior Judge MERCK, Judge BARTO, Judge MOORE, and Judge SCHENCK concur.

Judge JOHNSON took no part in the decision of this case.

---

**5.** *United States v. Wheelus,* 49 M.J. 283 (C.A.A.F. 1998).

**6.** If appellant had raised the issue on appeal, but failed to satisfy the "colorable showing of possi-

ble prejudice" threshold, our superior court says that we should articulate the reasons why there is no prejudice and affirm. *Wheelus,* 49 M.J. at 289.

HARVEY, Senior Judge, with whom Judge CURRIE joins, concurring in the result.

I agree with the majority that no relief is warranted for the staff judge advocate's (SJA) erroneous failure to include appellant's forty-four days of pretrial restriction to Fort Stewart in his post-trial recommendation (SJAR). I respectfully disagree with the majority opinion's requirement for "material prejudice" rather than the lower "colorable showing of possible prejudice" threshold articulated in *United States v. Wheelus,* 49 M.J. 283, 285 (C.A.A.F.1998), for SJAR errors.

The majority errs by holding that we are constrained to apply a plain error test in all cases involving post-trial processing errors not raised by trial and/or appellate defense counsel. It is well settled that Courts of Criminal Appeals are *not* constrained by the plain error doctrine. *See United States v. Armstrong,* 54 M.J. 51, 53 (C.A.A.F.2000); *United States v. Powell,* 49 M.J. 460, 464 (C.A.A.F.1998); *United States v. Claxton,* 32 M.J. 159, 162 (C.M.A.1991). In *United States v. Finster,* our superior court stated:

> The Court of Criminal Appeals may address prejudicial errors on its own motion and is not limited to the matters, if any, discussed in appellee's submission to that court. We note that under Article 66(c), UCMJ, the Courts of Criminal Appeals "may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Although the Courts of Criminal Appeals in appropriate cases may rely on the failure of the accused to identify prejudicial error as a basis for denying relief, it is well established that Article 66(c) establishes an affirmative obligation on those tribunals to review the record and reach their own independent conclusion as to whether the findings and sentence should be affirmed. Nothing in either Article 66(c) or Article

59(a) precludes the Courts of Criminal Appeals from identifying prejudicial error without regard to the nature or quality of an accused's submission on appeal.

51 M.J. 185, 188 (C.A.A.F.1999) (citations omitted). Unlike our superior court, we are required to conduct "an independent review of the entire record," and "review errors that are ... not raised at trial [or on appeal] and determine their impact, if any, on an appellant's 'substantial rights.' " *Powell,* 49 M.J. at 464; *see also Claxton,* 32 M.J. at 162.

The majority also misinterprets the meaning and holding of *United States v. Wellington,* 58 M.J. 420 (C.A.A.F.2003), and *Wheelus.* First, *Wellington* should not be read more broadly than justified by its facts and holding. In *Wellington,* the SJA misinformed the convening authority of Wellington's prior disciplinary record and about his pretrial restriction. Wellington's trial defense counsel did not object to or explain the errors. Appellate defense counsel noted the error before this court and argued that the error prejudiced Wellington. This court issued a summary affirmance instead of "articulat[ing] reasons why there is no prejudice." *Wheelus,* 49 M.J. at 289. Our superior court, which *is* bound by the plain error doctrine and Article 59(a), UCMJ, tested for plain error and found it: It concluded the errors were plain and obvious and resulted in material prejudice to Wellington's substantial right to an accurate SJAR. *Wellington,* 58 M.J. at 427 (citing *Powell,* 49 M.J. 460). Our superior court did not have the occasion to discuss the standards of review or the responsibilities of the Courts of Criminal Appeals regarding post-trial processing errors.

Second, our superior court's holding in *Wheelus* is based on the responsibilities of the Courts of Criminal Appeals under both Articles 59(a) and 66(c), UCMJ. *Wheelus* explained why a "colorable showing of possible prejudice" is the standard for evaluating prejudice in SJAR-error cases:

> Because clemency is a highly discretionary Executive function,[1] there is material prej-

---

1. Congress entrusted clemency to the convening authority as the party "best qualified and in the best position to obtain and evaluate information relevant to clemency—such as the accused's con-

duct while in confinement, personal financial burdens confronting the accused or his family, and his present mental and physical condition." *United States v. Healy,* 26 M.J. 394, 396 (C.M.A.

udice to the substantial rights of an appellant if there is an error and the appellant "makes some colorable showing of possible prejudice." *See* [*United States v.*] *Chatman*, 46 M.J. [321,] 323–24 [ (C.A.A.F. 1997) ]. If the appellant makes such a showing, the Court of Criminal Appeals must either provide meaningful relief or return the case to the Judge Advocate General concerned for a remand to a convening authority for a new post-trial recommendation and action.

Lastly, there are those cases where an appellant has not been prejudiced, even though there is clearly an error in the post-trial proceedings. If that be the case, then the Courts of Criminal Appeals preferably should say so and articulate reasons why there is no prejudice.

*Wheelus,* 49 M.J. at 289. By stating in *Wheelus* that "an appellant must allege prejudice as a result of the error" and "show what he would do to resolve the error if given such an opportunity," *id.* at 288, the court intended that appellate defense counsel assist the court in its determination of the existence of a colorable showing of possible prejudice. Rather than increasing the threshold for relief as the majority has done, a preferable alternative would be to specify this issue,[2] review whatever appellate defense counsel provide to the court, and then apply the colorable showing of possible prejudice standard.

I presume appellate defense counsel are competent until given reason to believe otherwise. Accordingly, I presume that they did not raise the SJAR error in this case because they knew they could not make a colorable showing of possible prejudice based on this error and the facts of this case. *See Wheelus,* 49 M.J. at 285 (holding no relief for SJAR's failure to include approximately six months of pretrial restriction to a short list of on-post facilities in Germany). Similarly,

after completing my own independent review of the record and applying Articles 59(a) and 66(c), UCMJ, I have determined that the error did not create a "colorable showing of possible prejudice," and therefore concur with the majority's decision to deny relief. *See United States v. Lee,* 52 M.J. 51, 53 (C.A.A.F.1999) (stating that the facts of the situation negated the need to "speculate about what the convening authority might have done if defense counsel had" submitted different matters); *see generally United States v. Ginn,* 47 M.J. 236, 248 (C.A.A.F. 1997) (third *Ginn* principle).

In conclusion, the fact that appellate defense counsel did not raise the error or allege prejudice does not relieve us of our Article 66(c), UCMJ, responsibilities as explained by *Wheelus,* nor does the majority cite any case that permits us to do so.

CLEVENGER, Judge, with whom Judge STOCKEL joins, dissenting.

I disagree with the majority's analysis of the law regarding factual errors in a staff judge advocate's (SJA) post-trial recommendation (SJAR). The majority properly recognizes the controlling provisions in Rule for Courts–Martial [hereinafter R.C.M.] 1106. But the plain error analysis they hold appropriate for our court to use in these circumstances is incomplete and would be better as described below.

I would find prejudicial legal error in the SJA's failure to advise the convening authority of the correct nature and duration of appellant's pretrial restraint in his SJAR as required by R.C.M. 1106(d)(3)(D). Additionally, although not amounting to prejudicial error, the military judge's failure to conduct an adequate inquiry into the terms of the pretrial agreement merits discussion.

---

1988). "It has long been asserted that an accused's best chance for post-trial clemency is the convening authority." *Wheelus,* 49 M.J. at 287 (citing *United States v. Wilson,* 9 U.S.C.M.A. 223, 226, 26 C.M.R. 3, 6, 1958 WL 3280 (1958)).

**2.** *See, e.g., United States v. Lange,* 53 M.J. 245 (C.A.A.F.2000) (summary disposition) (remand-

ing case to Navy–Marine Corps Court of Criminal Appeals to consider issue pertaining to SJAR error specified by Court of Appeals for the Armed Forces); *United States v. Sylvester,* 47 M.J. 390 (C.A.A.F.1998) (listing specified issues regarding defense counsel's post-trial performance).

## THE SJAR ERROR

### Facts

The SJAR erroneously advised the convening authority, "PRETRIAL RESTRAINT: None." In fact, appellant had been restricted to the limits of Fort Stewart, Georgia, between on or about 20 April 2002 until his trial on 3 June 2002. This information appears in the record of trial in a stipulation of fact agreed to by all parties and admitted without objection. The pretrial restraint, authorized by Articles 9 and 10, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 809 and 810, and R.C.M. 304(a)(2), was imposed upon appellant as a direct consequence of his behavior before 20 April when he was allegedly absent without leave. Both charge sheets in this case report "none" as to the "nature of restraint of accused." [1] At trial, the military judge asked the parties if the "personal data on the front page of the charge sheet" was correct.[2] Counsel did not correct the inaccurate pretrial restraint data on the charge sheets at that point in the trial, nor later. The military judge then observed, "Counsel, looking at the charge sheet, it appears that the accused has not been in pretrial confinement and is not entitled to any pretrial confinement credit. Is that correct?" Both counsel correctly answered in the affirmative. The military judge had read the stipulation of fact, so he was aware of the pretrial restraint as a mitigating circumstance when he imposed the sentence.

In this case the government failed to properly document, at every stage of the court-martial process, the pretrial restraint the commander imposed pursuant to R.C.M. 304(a)(2): charging (R.C.M. 306 and 307), forwarding (R.C.M. 401, 402, 403, and 404), investigating (R.C.M. 405) (albeit waived by appellant in this case), pretrial advice (R.C.M. 406), referral (R.C.M. 601), and the post-trial recommendation (R.C.M. 1106).[3] Furthermore, the existence of the pretrial restraint imposed on appellant was completely misstated in the SJAR. The detailed defense counsel did not object to the misstatement pursuant to R.C.M. 1106(f)(4). *See* R.C.M. 502(d)(6) discussion (E)(v) (detailed military defense counsel's post-trial duties).

### Law

Rule for Courts–Martial 304 defines pretrial restraint as "moral or physical restraint on a person's liberty ... [and] may consist of conditions on liberty, restriction in lieu of arrest, arrest, or confinement." Article 60(d), UCMJ, and R.C.M. 1106(a) require the SJA to provide written advice in an SJAR before the convening authority takes action in a general court-martial. The SJA is instructed to "use the record of trial in the preparation of the recommendation." R.C.M. 1106(d)(1). This failure to correctly note the pretrial restraint in the SJAR is an all too common error. In addition to reflecting a failure to carefully review the record, it violates the Commander–in–Chief's direction in R.C.M. 1106(d)(3)(D), "Form and Content of Recommendation—Required Contents" which states, "[T]he recommendation ... shall include ... [a] statement of the nature and duration of any pretrial restraint." Here, the SJAR misstated the mitigating fact of pretrial restraint and thus misinformed the general court-martial convening authority (GCMCA) regarding the exercise of what is arguably an important statutory, command function—taking action on the results of courts-martial under the congressional mandate of 10 U.S.C. § 860. UCMJ art. 60.

---

1. Blocks 8 and 9, concerning any pretrial "restraint" imposed on an accused, are a part of Section I, the "Personal Data" on the charge sheet.

2. Trial defense counsel told the military judge "no," but the prosecutor then announced that he had made "the corrections" prior to trial. Indeed, both charge sheets reflect two changes in the personal data section relating to the spelling of appellant's first name and the initial date of his current service. The original charge sheet also reflects an inconsequential change to Specification 4 of Charge II in what appears to be the same black ink as those made in the personal data, but none of the changes are initialed or dated to indicate who made the changes or when they were made. *See* R.C.M. 603(b) discussion.

3. Commanding officers, who have nearly unfettered discretion to impose restraints on the liberty of their subordinates, short of pretrial confinement, and their legal staff officers and supervisory noncommissioned officers, would do well to keep better track of exactly how and when, and upon whom, such restraints are imposed.

For this type of factual SJAR error, however, unless objected to below or raised as error to us, we are limited to reviewing for plain error. R.C.M. 1106(f)(6).

Our brothers, who only concur in the majority's result, seemingly misunderstand the role of a plain error doctrine in our court's jurisprudence. Our somewhat unique, mandatory review function certainly has constraints in Article 59(a), UCMJ (as to when we can reverse) and in Article 66(c) (as to when we can affirm). *United States v. Powell*, 49 M.J. 460, 464 (C.A.A.F.1998). Both *United States v. Armstrong*, 54 M.J. 51 (C.A.A.F.2000) and *United States v. Claxton*, 32 M.J. 159 (C.M.A.1991), upon which they rely to reject the application of a plain error doctrine to a factual SJAR error, such as is at issue here, are distinguishable. In each case, the government was challenging the lower Court of Criminal Appeal's grant of relief to an appellant without applying a plain error test to trial deficiencies to which trial defense counsel did not object. In each case, our superior court, affirming the Court of Criminal Appeals and rejecting the government's challenge, relied on the clear authority of Article 66(c) (the constraint not to affirm in the face of an error of law or where a finding or sentence should not be affirmed). But neither case was, as here, further constrained by the exercise of the President's powers under Article 36, UCMJ, 10 U.S.C. § 836, and R.C.M. 1106(f)(6). Unlike the circumstances in *Armstrong* and *Claxton*, we

are constrained by a plain error doctrine in reviewing this SJAR error.[4]

**Discussion**

The majority would adopt the same "plain error" model that our superior court applies to their review of SJAR errors. While I agree with the majority's analysis of why *Wheelus* should not apply in cases where the defense fails to raise the issue, I think our court's doctrine of plain error for SJAR reviews ought to be different. The SJAR is not at all a trial process. There are no sudden tactical decisions to be made, very little significant time pressure, and an authenticated record of trial is at hand to guide and inform the SJA and defense counsel in the performance of their duties. The opportunity for the defense to ensure that the convening authority is properly informed is statutorily guaranteed. Mandatory appellate review with detailed appellate defense counsel protects against a trial attorney's post-trial error of failing to continue to zealously represent a client. Under these conditions, if the lesser burden allowed by *Wheelus* is forfeited on appeal, there is no logical reason why we should not review on a different, more stringent, plain error standard.

Thus, to determine if an SJAR error not raised below amounts to "plain error," this court should apply the following analytical framework: (1) whether there is an error; (2) whether the error is obvious or clear; (3) whether it is a substantial[5] error; and (4) whether the error had "an unfair prejudicial impact on [the action taken]?" *Fisher*, 21

---

4. Let me make clear that I think our plain error doctrine for SJAR errors can properly be sui generis. The President did not define it in R.C.M. 1106 and certainly our superior court did not do so in *Wheelus* or *Powell*. Indeed, *Powell* most clearly stands for the proposition that the plain error doctrine can have several properly applied definitions and that a Court of Criminal Appeals' best guidance from our superior court is in *United States v. Fisher*, 21 M.J. 327 (C.M.A. 1986). At its heart, plain error is only a judicially created doctrine, albeit adopted as useful by legislative and executive agencies who craft substantive rules of procedure, to avoid the harsh consequences of waiver in doing justice. It remains a reviewing court's highest function to do justice within the bounds of the law by navigating between imposing plain error remedies on the government and burdening appellants with waived errors.

5. This third prong is a very valuable part of this "plain error" test. A "substantial" error measures the nature of the error, not its impact—the role of the fourth definitional aspect. Requiring that the error be deemed "substantial" allows us to recognize that some errors will be so *de minimus* in nature considering the totality of the circumstances of a case, so as to not require an analysis of their impact on the convening authority's decision under Article 60, UCMJ. This is consistent with the decisions in *United States v. Wilson*, 54 M.J. 57 (C.A.A.F.2000), and *United States v. Kho*, 54 M.J. 63 (C.A.A.F.2000), wherein the Court of Appeals for the Armed Forces, on de novo review, affirmed the Navy–Marine Corps Court of Criminal Appeals' decisions, finding no plain error in various insubstantial SJAR failures and that the errors, if any, did not satisfy even the lower threshold of a "colorable showing of possible prejudice."

M.J. at 328 (quoting *United States v. Young,* 470 U.S. 1, 16 n. 14, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)). As restated in *Powell,* the fourth step in this analytical model means that the error, in order to be "plain error," must materially prejudice a substantial right of appellant. 49 M.J. at 464.

This SJA post-trial processing error (a failure to correctly note any pretrial restraint) is distressingly common in the records of trial reviewed by this court. The deficiency amounts to a systemic military justice failure, but it is easily rectified. I agree with the majority that a large part of the problem relates to a fundamental misunderstanding of the requirement. As quoted above, the rule does not mandate reporting only restraint that might rise to the level of requiring a confinement credit analysis and/or an award of pretrial confinement credit. Under R.C.M. 1106(d)(3)(D), the SJAR must accurately state *any* R.C.M. 304(a) restraint.[6] If *all* forms of pretrial restraint were accurately reported on the charge sheet initially, then the existence of a valid operational or nonmilitary justice basis could be established by proof of facts or agreed upon easily at trial.[7] A careful review of the record by the legal officer preparing the SJAR should have discovered the true facts in this case and ensured that the restraint data reported to the GCMCA was accurate. This error is a widespread problem and needs to be recognized

and corrected earlier in the court-martial process.

This systemic failure involves more than merely an inexcusable lack of attention to detail by The Judge Advocate General's Corps attorneys and nonlawyer military personnel who process charges. A loss of liberty, especially in the form of restraint on a person's ordinary freedom to come and go, while having to stay within the confines of physical limits marked by walls, security fences, barriers and gates, as is the case for most military installations, has an impact that can directly affect disposition, action, and appellate review of decisions in the administration of military justice.[8]

Here, the "substantial right" at issue in this plain error inquiry is found in Article 60(d), UCMJ. That provision requires the convening authority to approve a court-martial finding and sentence only after obtaining and considering the SJAR. It also requires the SJA to use the record of trial to prepare the SJAR, and to include in the SJAR the matters prescribed by the President that are found in R.C.M. 1106(d). *See United States v. Wellington,* 58 M.J. 420, 427 (C.A.A.F. 2003) (addressing whether the SJAR errors—misstatement of Wellington's prior nonjudicial punishment record and failure to note pretrial restraint—materially prejudiced Wellington's "substantial right to have a request for clemency judged on the basis of an accurate record").[9]

6. Military justice practitioners may elect to not report restraint imposed upon an accused soldier under R.C.M. 304(h) (restraint for operational or other military purposes independent of military justice reasons), but only at the risk that later a court will hold it to be a different form of restraint or imposed for a different purpose and thus subject to subsequent remedial action.

7. *Manual for Courts–Martial, United States* (2000 ed.), app. 4, provides military justice practitioners with a sample charge sheet reflecting "restriction" in section I, block 8. I note that this court frequently sees references in trial transcripts to "revocation of pass privileges" that a commander imposed in response to allegations of misconduct against a soldier and the government characterizes as a "condition on liberty" pursuant to R.C.M. 304(a)(1), albeit usually not properly noted on the charge sheets. Whether that revocation of pass privileges, a ban on departing from an installation, is equivalent to an order "to remain within specified limits" and

thus, a restriction pursuant to R.C.M. 304(a)(2) for R.C.M. 707 speedy trial purposes is less significant here than the fact that it is clearly a form of pretrial restraint under R.C.M. 304(a) that should be noted on the charge sheet and must be included in the SJAR.

8. The imposition of pretrial restraint has other potentially significant consequences regarding speedy trial. R.C.M. 707(a)(2) and (d); *see United States v. Carlisle,* 25 M.J. 426, 428 (C.M.A. 1988) ("ON DAY NUMBER 1, EVERYONE ASSOCIATED WITH A CASE SHOULD KNOW WHAT DAY WILL BE NUMBER 120.").

9. In interpreting *Wellington,* some of our brothers draw a conclusion from what our superior court does not say in that opinion. But they read *Wellington* too broadly. Since the Army Court of Criminal Appeals in that case "summarily affirmed," it did not address the SJAR error or what, if any, standard of review was applied. Thus, it is not surprising that the issue discussed

If the SJA misinforms the convening authority of a relevant mitigating circumstance concerning appellant's pretrial restraint in the SJAR, the question is fairly put: Did the absence of the correct information adversely impact the convening authority's decision? Or, as here, did the incorrect statement of "none" concerning pretrial restraint, uncorrected by any defense submission, prejudicially affect that decision? The nature and duration of "any pretrial restraint" is a factor the President intended convening authorities to consider when acting under Article 60, UCMJ, and R.C.M. 1107. Many assert that an accused's best chance for post-trial clemency is the convening authority. *See Wheelus*, 49 M.J. at 287; *United States v. Wilson*, 9 U.S.C.M.A. 223, 226, 26 C.M.R. 3, 6, 1958 WL 3280 (1958).

A majority of this court, while stating "[w]hatever effect, if any" the misstated pretrial restraint error could have had on the convening authority's action decision in appellant's case, they nonetheless conclude that, even if reported accurately, the correct data "would not have affected the sentence as approved by the convening authority." *United States v. Scalo*, —— M.J. ——, ——, 2003 WL 22964558 (Army Ct.Crim.App. 18 Dec. 2003). In *United States v. Hill*, 27 M.J. 293, 296 (C.M.A.1988), our superior court concluded that "in most instances, failure of the staff judge advocate or legal officer to prepare a recommendation with the contents required by R.C.M. 1106(d) will be prejudicial and will require remand [for a new review and action]." This is because "the

President has required that the convening authority be provided with information that will assist him in the exercise of his discretion." *Id.* Moreover, "it is very difficult to determine how a convening authority would have exercised his broad discretion if the staff judge advocate had complied with R.C.M. 1106." *Id.; see Wellington*, 58 M.J. at 427. Accordingly, only when this court "is convinced that, under the particular circumstances, a properly prepared recommendation would have no effect on the convening authority's exercise of his discretion—the burden in this regard being on the Government—"may we decline to provide a meaningful remedy. *Hill*, 27 M.J. at 296. Here, as the issue was never litigated before us, the majority of this court improperly assumes the government's burden and affirms.[10]

To determine the existence of "material prejudice," we first recognize that not every accused soldier is subjected to the loss of liberty inherent in pretrial restraint pending a court-martial. Appellant's pretrial restraint was a restriction to specified physical limits, albeit a large military installation. Such restraint can be a type of lawful punishment for both nonjudicial punishment and a court-martial, but it was not used here as punishment.[11] Nevertheless, the restraint was more than slight or incidental both in duration and in its impact on appellant's liberty.

A review of appellant's R.C.M. 1105 submission reflects a reasoned request for a

was not the Court of Criminal Appeals' review of the error, but rather the merits of the SJAR error, raised on petition and thus reviewed for plain error pursuant to R.C.M. 1106(f)(6) under our superior court's view of its plain error doctrine powers as a discretionary appeals court.

**10.** The judges who concur only in the result imply that the majority opinion places too high a burden on appellant's defense counsel. But it is the President in R.C.M. 1106(f)(6), pursuant to his Article 36, UCMJ, authority who imposed the plain error standard. To the extent that *Wheelus*, properly invoked by an appellate defense counsel, can lower the threshold of prejudice necessary to gain relief, our superior court has decreed that this lower standard should be applied.

Furthermore, our Article 66(c), UCMJ, duty to only affirm so much of the findings and sentence

as "should be approved" is an entirely separate matter. The SJAR error here is both a factual and a legal error. If the majority objects that granting a remedy would make the affirmed sentence inappropriately lenient, I object to affirming, without applying a corrective remedy, an approved sentence in a case that is not "correct in law and fact" when it was initially approved by the convening authority. Indeed, where the error as here is a "substantial error" and "materially prejudicial to a substantial right," then corrective action is mandated.

**11.** It is clear that this pretrial restraint was lawfully imposed on appellant pursuant to R.C.M. 304(c) and probably imposed to ensure his presence for trial in light of his prior absence without leave status.

reduction in confinement, when appellant had already served over half his sentence to confinement. A soldier's willingness to comply with strict disciplinary standards is normally seen as a positive attribute. This record does not indicate that appellant violated the restraint. We may reasonably conclude he adhered to those pretrial restraint requirements. Three U.S. Army noncommissioned officers offered unrebutted evidence that appellant was a good worker who had created no problems. A psychiatrist explained a motive, albeit not a legal excuse, for appellant's marijuana usage. Appellant had made financial restitution to the victim. Additionally, the convening authority had already evaluated appellant's case and approved a pretrial agreement for substantially less than the maximum punishment, indicating a somewhat favorable view of appellant's circumstances.

The restraint continued from late April, through all of May and into early June—over forty days. But starting with the charge sheets that went to the GCMCA for referral consideration, the government failed to correctly inform the commander of the pretrial restraint imposed on a member of his command. Indeed, it was affirmatively misstated as "none." The SJA did not follow the law and failed to correctly advise the convening authority about appellant's pretrial restraint. Considering all the circumstances noted above, including the nature and duration of this misreported pretrial restraint to the GCMCA, especially when he acted to approve a sentence imposing a loss of liberty, the error had an adverse impact on appellant. On the facts of this case, I would hold that this obvious and substantial SJAR error materially prejudiced the substantial rights of appellant. To remedy this plain error, appellant merits relief by having the original action set aside and his case remanded for a new review and action. Alternatively, we could, in the exercise of judicial economy, act under our "broad powers to moot claims of prejudice" and direct a "sentence reduction, rather than returning the record of trial to a convening authority for a new recommendation and action." *Wheelus*, 49 M.J. at 288. I would reduce the period of confinement affirmed to only ten months to effect that form of meaningful relief.

## THE PRETRIAL AGREEMENT TERMS

Appellant tendered his pleas of guilty pursuant to a pretrial agreement signed by the GCMCA. The quantum portion required the GCMCA "to suspend that part of any sentence to confinement in excess of 12 months for a period of 12 months." The pretrial agreement, dated 14 May 2002, makes reference to "a general court-martial now pending," although the charges against appellant were not referred to trial by general court-martial until 16 May 2002.[12]

In paragraph 3e the document states,

This agreement constitutes a request by me for, and approval by the Convening Authority of, deferment of the portion of any confinement to be suspended or disapproved pursuant to this agreement. The period of deferment will run from the date the accused is to be released from confinement pursuant to this agreement until the date the convening authority acts on the sentence.

The first problem is to determine the intent of this language in the agreement. In the usual sequence of actions on adjudged sentences, deferral would precede suspension or disapproval. If any confinement were disapproved, it could not thereafter be deferred. However, if any confinement were suspended (Article 71(d), UCMJ), 10 U.S.C. § 871(d), and the suspension were later vacated (Article 72, UCMJ), 10 U.S.C. § 872, that confinement could still be deferred for a period of time before being executed. I assume the parties were referring to the potential period of confinement that the GCMCA had agreed to suspend, that was in excess of twelve months. Then, the second sentence of paragraph 3e addresses the circumstance where appellant might have served all his required,

---

12. There are pen and ink changes to this pretrial agreement, but without any indication as to when or by whom they were made. Fortunately, they are apparently inconsequential changes. And in paragraph 3b, although appellant asserted, "I understand that I have a right to be tried by a court consisting of 3 officer members," the military judge alertly cleared up that misstatement in his inquiry pursuant to R.C.M. 910(f)(4).

not-to-be-suspended, confinement time before the GCMCA acted on the case.

In that not uncommon circumstance, wherein an appellant serves the sentence to confinement well before the convening authority acts on the case, the GCMCA here would not yet have suspended or disapproved the additional confinement time adjudged in excess of twelve months. To ensure that appellant had the benefit of his bargain, deferral at that point in time (the date for release from confinement with all credits for having served a twelve month sentence) would keep appellant out of confinement, based on the deferment, until action was taken in his case. But whatever interpretation might or should be put on this provision, the military judge totally ignored it during his inquiry.

Likewise, the military judge did not discuss paragraph 5 with appellant. It provided that if "before or during trial, any specification is amended, consolidated, or dismissed with [appellant's] consent for multiplicity or other reason, this agreement will remain in effect." In this case, all three events happened. There was a pen and ink amendment (an inconsequential word was stricken) to Specification 4 of Charge II; both Charge I and its Specification and the Additional Charge and its Specification were dismissed; and the military judge consolidated Specifications 6 and 7 of Charge II for sentencing purposes. This pretrial agreement provision was never addressed, and appellant was never asked if he consented to all those events and thus wanted to preserve his pretrial agreement. R.C.M. 910(f) and (h)(3).

"To ensure that the record reflects the accused understands the pretrial agreement and that both the Government and the accused agree to its terms, the military judge must ascertain the understanding of each party during the inquiry into the providence of the plea." *United States v. Smith*, 56 M.J. 271, 272–73 (C.A.A.F.2002). Our superior court has also stated in *United States v. Bartley*, 47 M.J. 182, 186 (C.A.A.F.1997), "[T]o ensure servicemembers are afforded their constitutional and statutory rights and to ensure finality of judgments, military law *requires detailed inquiries* concerning pretrial agreements and guilty pleas." (Emphasis added). That means that the judge "must assure on the record that the accused understands the meaning and effect of *each provision* in the pretrial agreement." *United States v. Jones*, 23 M.J. 305, 308 (C.M.A. 1987) (emphasis added) (citing *United States v. Green*, 1 M.J. 453 (C.M.A.1976)). On the record before us, there is no known disagreement as to any material term, possibly because the military judge never addressed two potentially significant provisions.[13] However, appellant personally assured the military judge that he understood all the terms of his pretrial agreement and had no questions about any of them. Our interpretation of each unexplained provision is favorable to appellant. The military judge should have specifically inquired about appellant's understanding, especially since the deferment term was potentially vague or ambiguous and the "amended, consolidated or dismissed" provision of the pretrial agreement (*see* para. 5) was actually in operation. R.C.M. 910(f)(4)(A). In this instance, however, there is no prejudice to appellant's substantial rights. Hence, no relief is required for this deficiency. UCMJ art. 59(a).

---

13. This court has recently seen other pretrial agreement inquiries in which the judge merely referenced "the paragraphs on page 2 (which) appear to be standard conditions in a pretrial agreement" or merely asked the detailed defense counsel if a provision providing for a potential deferment of sentence was "the standard provision." What may be "standard" to lawyers and judges is likely "Greek" to most accused soldiers at a court-martial. The note at paragraph 2–2–6 of the Military Judges' Benchbook tells trial judges that they "must discuss each provision of the pretrial agreement with the accused." Reviewing authorities should not have to hunt for evidence of compliance in diverse portions of the record.